301 So.2d 297 (1974)
Pete RUSH, Jr.
v.
STATE of Mississippi.
No. 48073.
Supreme Court of Mississippi.
October 7, 1974.
*298 Wilbourn, Williams & Glover, Robert E. Jones, Meridian, for appellant.
A.F. Summer, Atty. Gen., by Ben H. Walley, Asst. Atty. Gen., Jackson, for appellee.
WALKER, Justice:
This is an appeal from the Circuit Court of Lauderdale County, Mississippi, wherein appellant was convicted of the crime of rape of a female over the age of twelve years and sentenced to life imprisonment. We affirm.
The prosecutrix testified that on the morning of May 17, 1973, shortly after 9:30 a.m., the appellant, whom she did not know and had not seen before, came to her home in Marion, Mississippi, and inquired whether or not she knew a particular person who supposedly lived in the neighborhood. After telling appellant that she did not know this individual, the appellant grabbed her by the throat, strangled her, dragged her into an adjoining room and threw her on the floor where he raped her. (The penetration was described in detail.) She stated that he had his hand on her throat and on her shoulder so that she could not raise up; that she was so scared she could not even raise her arms to hold her little boy's hand, as he was standing directly above them crying; that after she had been grabbed by the throat she could not breathe as she was gagging, and she became groggy; and, that the appellant was positively the person who attacked her. Photographs of the prosecutrix showing bruises about her neck were made a part of the record by exhibit.
On cross-examination she stated that she could not scream during the attack because appellant's hands were on her throat and when she tried to scream, nothing would come out; that she did not make any physical resistance; and, that she did not hit her assailant. She testified, "I couldn't do anything. I was so scared. It was just like I was frozen. I couldn't raise my arms or anything. I was just like I was paralyzed. I couldn't move." She further testified that she was concerned for her child's life and she wanted to raise her hand up to hold her little boy's hand but she could not even do that because she was so scared; that she feared if she resisted, he might hurt her worse; that "... it was like a dead weight on top of me and then all I could think of I didn't want to get him angry. I was scared he might hurt my baby or me, to make me cooperate, ..."; that he never threatened her or her child and in fact she did not remember him saying anything throughout the attack other than "Shhh"; that when he first grabbed her by the throat, she did not have time to do anything else; that during the attack his hand did not remain on her throat at all times, but when his hand was removed from her throat, she was too scared to scream; and, that the attack lasted about two minutes.
The husband of the prosecutrix, who ran a store some 300 to 400 yards from his home where the attack occurred, testified that he had returned to his home shortly after 9:30 a.m. Upon arriving he found the door to the outside standing open, and upon entering he observed the appellant on top of his wife, while their three-year-old child stood directly over them crying. A fight ensued between himself and appellant during the course of which appellant ran from the house.
Immediately after the attack, the authorities were notified and the victim was carried *299 to the hospital. Shortly thereafter, appellant was taken into custody approximately 150 yards from the prosecutrix's home.
The appellant's primary contention is that he should have been granted a peremptory instruction of acquittal on the ground that the evidence is clear and undisputed that the victim did not physically resist the attack upon her. This contention is without merit under the facts of this case. We have held in numerous cases that physical resistance is not required where the female yielded through fear under a reasonable apprehension of great bodily harm. Fields v. State, 293 So.2d 430 (Miss. 1974); Johnson v. State, 223 Miss. 56, 76 So.2d 841 (1955). If the female fails to resist the attack of her assailant because she is put in such apprehension and fear, the act of the assailant may be rape under the law. Fields, supra; McGee v. State, 40 So.2d 160 (Miss. 1949), cert. denied, 338 U.S. 805, 70 S.Ct. 77, 94 L.Ed. 1369 (1950); Milton v. State, 142 Miss. 364, 107 So. 423 (1926).
In the cases cited, there were verbal threats and the exhibition of a knife or gun. In the instant case, the appellant did not make any verbal threats or utterances of any kind nor did he exhibit a deadly weapon. However, the testimony is undisputed that appellant grabbed the victim by the throat, dragged her into the adjoining room and forced her to the floor placing the weight of his body upon her. The extent of the force and pressure upon her throat is reflected in the prosecutrix's testimony that: "I couldn't breathe and I was gagging and it kinda made me groggy."
In describing the fear that she experienced at the time, the prosecutrix said:
I couldn't do anything. I was so scared. It was just like I was frozen. I couldn't raise my arms or anything. I was just like I was paralyzed. I couldn't move.
......
Well, he was  it was like a dead weight on top of me and then all I could think of I didn't want to get him angry. I was scared he might hurt my baby or me, to make me cooperate, and I just wanted him just to go away and leave us alone.
She later testified that she was afraid that if she resisted, he (appellant) would hurt her worse.
The severity of the attack and pressure applied to her throat is evidenced by photographs taken shortly after the attack showing bruises on both sides of her throat. The recentness of the bruises was also corroborated by the attending physician who saw her within two hours of the attack. Under the circumstances, the prosecutrix had good reason to believe that she and perhaps her child were in danger of great bodily harm if she physically resisted, as the appellant had amply demonstrated his ability and willingness to inflict bodily harm upon her by choking her into a state of grogginess.
The appellant complains of the court's refusal to grant his requested instructions No. 12, 18 and 20. We have carefully examined these instructions and find the wording thereof to be so patently inappropriate for instructions and so likely to mislead and confuse a jury that they require no discussion. The trial court committed no error in refusing these instructions.
The appellant also complains of the refusal of the trial court to grant instruction No. 21. This instruction dealt with the degree of proof necessary to prove that "threats were made" which caused the prosecutrix to submit to appellant's advances. The trial court properly refused this instruction since it did not relate to the proof as there was no evidence that any threats were made. In fact, the evidence was that the appellant did not utter a word during the course of the attack.
*300 The appellant next complains that reversible error was committed when the deputy sheriff brought him into the courtroom in handcuffs in the presence of the members of the special venire. The handcuffs were immediately removed from appellant at the request of his counsel. Thereafter, the court and the attorneys voir dired the jury in the usual manner after which a panel of twelve jurors was accepted to try the case.
The appellant contends that being exposed to the jurors in handcuffs denied him a fair trial. It is a common-law right of a person being tried for the commission of a crime to be free from all manner of shackles or bonds, whether of hands or feet, when in court in the presence of the jury, unless in exceptional cases where there is evident danger of his escape or in order to protect others from an attack by the prisoner. Whether that ought to be done is in the discretion of the court, based upon reasonable grounds for apprehension. But, if this right of the accused is violated, it may be ground for the reversal of a judgment of conviction. Marion v. Commonwealth, 269 Ky. 729, 108 S.W.2d 721 (1937).
However, the failure, through an oversight, to remove handcuffs from a prisoner for a short time or any technical violation of the rule prohibiting shackling, not prejudicial to him, is not ground for reversal. Marion, supra:
Under the facts and circumstances of this case, we are of the opinion that the action of the deputy sheriff in bringing the appellant into the courtroom in the presence of the prospective jurors while handcuffed did not result in any prejudice to his right to a fair trial. See United States v. Hamilton, 444 F.2d 81 (5th Cir.1971); Williams v. Commonwealth, 474 S.W.2d 381 (Ky. 1971).
Due to the severity of the sentence imposed by law upon the appellant, we have carefully and meticulously examined the record in this case and are of the opinion that the jury was amply justified in finding the appellant guilty of rape beyond a reasonable doubt.
The defendant did not testify and did not undertake to explain or contradict, in any manner, the testimony of the prosecuting witness.
While it is the right and privilege of a defendant to refrain from taking the witness stand, and no presumption is to be indulged against him for exercising that right, still the testimony of the witnesses against him may be given full effect by the jury, and the jury is likely to do so where it is undisputed and the defendant has refused to explain or deny the accusations against him. Reeves v. State, 159 Miss. 498, 132 So. 331 (1931). Furthermore, the testimony of the prosecuting witness is not unbelievable nor is it contradicted by the physical evidence or everyday human experience.
The judgment of the lower court is therefore affirmed.
Affirmed.
GILLESPIE, C.J., and PATTERSON, INZER and BROOM, JJ., concur.