662 So.2d 629 (1995)
Clifton D. DAVENPORT
v.
STATE of Mississippi.
No. 92-KA-00641-SCT.
Supreme Court of Mississippi.
October 5, 1995.
Martin A. Kilpatrick, Greenville, for appellant.
Michael C. Moore, Attorney General, Deirdre McCrory, Special Ass't Attorney General, Jackson, for appellee.
Before PRATHER, P.J., and BANKS and McRAE, JJ.
BANKS, Justice, for the Court:
Here we are presented with a claim of double jeopardy where a mistrial was declared, *630 on defendant's motion, following revelation of a prosecutorial discovery violation. We conclude that the defendant has failed to preserve the issue because, although a written motion was filed raising the plea, there is nothing in the record to suggest that he brought the motion on for hearing or obtained a ruling thereon. We also conclude that the possibility that the defendant may have inadvertently been observed by one or more jurors at a time when he was in shackles being transported between the courtroom and the jail is insufficient to disturb the verdict. Accordingly, we affirm.

I.
On December 17, 1991, Clifton Davenport (Davenport) was indicted for the September 29, 1991, murder of Willie Phillips, Jr., by use of a firearm. Davenport pled not guilty and trial was set for April 22, 1992. The following is based upon Davenport's uncontradicted chronology of events.
A jury was selected and empaneled on April 22 as scheduled. Prior to opening statements, the State requested a recess to confer with witnesses after which the State advised the court of evidence of which the prosecutor claimed no prior awareness. The evidence consisted of an October 13, 1991, written statement given to the Greenville Police Department by the decedent's brother, Martlin Lee Phillips (Phillips), after he was arrested for public drunkenness with a .38 caliber weapon on his person. The weapon was matched with a spent casing found at the scene of the decedent's murder. In the statement, Phillips alleged that the day after the decedent's death, he was given the gun by a man named "Man" who told him that he believed the weapon was used to commit the murder. Man allegedly bought the gun for $20 from an individual named "Rock Star." On the night prior to his arrest, Phillips allegedly saw an individual named Roderick Franklin, also known as "Pipe," who stated that he gave the gun to the person who killed the decedent.
The State subsequently informed the court that it did not intend to use the newly discovered evidence during trial. The defense, however, requested a continuance in order to review the evidence. The continuance was granted and the case was rescheduled for May 27, 1992.
On May 15, 1992, Davenport filed a plea of former jeopardy asserting that it would have been grossly imprudent on behalf of defense counsel not to request a continuance after learning of the newly discovered evidence. He contended that a second trial would violate the guarantee against former jeopardy. There is no record of a presentation of the motion. Nor is there an order indicating the court's ruling on Davenport's motion. In his post trial motions and in his appeal before this Court, Davenport asserts that the trial court erred in "overruling" his plea of former jeopardy. He has not filed a reply brief responding to the assertion made by the State that no ruling appears of record. The case proceeded to trial on May 27, 1992. During trial, Phillips testified on behalf of the defense and recanted the same facts given in his statement to the Greenville Police.
Davenport also moved for a mistrial on two occasions, alleging that four jurors observed him in shackles. He contended that while being transferred from the court to jail, a juror saw him as she passed him in her car. Denying the motion, the court reasoned that prisoners are transported at times and in manners in which jurors can't observe them. But because the courthouse and jail are attached, it is conceivable that a juror could have observed Davenport in shackles. The court found that such an observance was not inherently prejudicial. Davenport later renewed his motion for mistrial, alleging that two other jurors saw him in shackles. He contended that one juror saw him when he was being transported downstairs in the courthouse during the lunch break, and the second juror saw him outside the courthouse when she was waiting on a ride. The court denied the motion on the same grounds.
After the close of testimony, the jury found Davenport guilty of murder and he perfected this appeal.

II.
Davenport contends that jeopardy attached in his first trial when the jury was *631 empaneled and sworn to try the case. Jones v. State, 398 So.2d 1312 (Miss. 1981). In Jones, this Court held that:
Mandated by decisions of the United States Supreme Court, the rule in this state beginning with this case is that double jeopardy attaches in any criminal proceeding at the moment the trial jury is selected and sworn to try the case. Because of the guarantee against double jeopardy granted to all citizens by the Fifth Amendment to the United States Constitution, no retrial for the same offense will be permitted in any criminal case in which the first trial, following the swearing and empaneling of the jury, was aborted prior to conclusion, unless exceptional circumstances existed in the first case, and there was a manifest necessity for the trial judge to declare a mistrial.
Jones, 398 So.2d at 1314.
Davenport contends that defense counsel was preparing for presentation of its opening statements and, but for the newly-discovered evidence, the trial would have concluded before the jury which was seated. He argues that the state was aware of the exculpatory nature of the evidence, and as a matter of strategy chose to proceed without it. Had the State requested and been granted a continuance because of the evidence, Davenport argues that he could not have been retried. Davenport contends that he was forced to request a continuance because the evidence identified four people, not including himself, who handled the gun identified as used in the murder. Had the defense gone forward with trial, they would have done so at the peril of a wholly inadequate investigation.
Davenport further argues that although the prosecution offered not to tender the new information into evidence pursuant to Rule 4.06(i)(3) of the Uniform Criminal Rules of Circuit Court Practice, the offer was of no aid to him because of the exculpatory nature of the evidence.
As the State correctly asserts, although Davenport contends that the court erred in "overruling" his plea of former jeopardy in his motion for new trial and in his appeal before this Court, the record contains no indication either in the court papers or the record that the trial court ruled on Davenport's motion. The record only reflects that a motion was filed. The facts here are analogous to those in Lambert v. State, 518 So.2d 621 (Miss. 1987). In Lambert, a defendant on trial for embezzlement filed a motion for continuance in order to review information supplied pursuant to discovery requests. The defendant appealed, arguing that the court erred when it failed to grant the motion for continuance. However, aside from the motion itself and a mention of the motion in the defendant's motion for new trial, there was no record of any argument in furtherance of the motion. This Court held that:
[I]t is paramount on the party filling a motion to follow up that action by bringing it to the attention of the trial judge and requesting a hearing on it. Sharplin v. State, 357 So.2d 940 (Miss. 1978); Dyer v. State, 300 So.2d 788 (Miss. 1974). As previously stated, the record is absent of any such action taken by Lambert. Further, trial judges are vested with broad discretionary powers in granting or refusing to grant a continuance. Carter v. State, 473 So.2d 471 (Miss. 1985); Greene v. State, 406 So.2d 805 (Miss. 1981). This Court will not hold a trial court's granting or denial of a motion for a continuance to be error unless such amounts to an abuse of discretion that acts to prejudice the defendant. Fermo v. State, 370 So.2d 930 (Miss. 1979). As the record reflects no action taken by Lambert in furtherance of the motion, and as there was no evidence of any abuse of discretion on the part of the trial judge, the assignment of error is without merit.
Lambert, 518 So.2d at 623.
Similar to Lambert, because there is neither an indication in the record that Davenport argued his motion before the court nor evidence that he received a ruling on his motion, there is no evidence of any error on behalf of the trial court. Thus, Davenport's assignment of error is without merit. See also Wright v. State, 540 So.2d 1, 4 (Miss. 1988) (defendants waived their objection that their guilty verdict was not supported by sufficient evidence when it did not appear in the record that their motion for new trial was ruled upon by the trial court).
*632 Davenport's assignment of error is also unfounded on the merits. Rule 4.06(i)(1) of the Uniform Criminal Rules of Circuit Court Practice provides that the defense is to be granted a reasonable opportunity to interview newly discovered evidence if the prosecution seeks to introduce such evidence at trial. Rule 4.06(1)(2) further provides that:
[i]f, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court should, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
In the present case, the prosecution did not seek to introduce the newly discovered evidence into trial. Thus, technically, the trial court was not required to grant Davenport's motion for continuance under Rule 4.06(i)(2).
Davenport's contention must fail, however, because there was no prosecutorial misconduct or judicial error necessitating his request for a continuance. A defendant who moves for a mistrial is generally barred from later asserting a double jeopardy violation. McClendon v. State, 387 So.2d 112, 114 (Miss. 1980) (where defendant requested a mistrial, he waived his right to be tried by the jury originally empaneled and sworn). In Carter v. State, 402 So.2d 817, 821 (Miss. 1981) this Court held:
In order to elevate an order granting a mistrial in a criminal case at the request of the defendant to one which could form the basis of a claim of double jeopardy, it must be shown not only that there was error, which is the common predicate to all such orders, but that such error was committed by the prosecution or by the court for the purpose of forcing the defendant to move for the mistrial.
In so ruling, this Court anticipated the posture of the United States Supreme Court which, in 1982, clarified the law of Double Jeopardy under the Constitution of the United States by holding that prosecutorial conduct which is merely "overreaching" or deliberate "harassment" is insufficient to apply the Double Jeopardy bar to retrial after a defense motion for mistrial. Oregon v. Kennedy, 456 U.S. 667, 675, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982). "Only where the governmental conduct in question is intended to `goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." Id.; Wheat v. State, 599 So.2d 963, 965 (Miss. 1992).
There is no evidence of judicial error in the present case. Furthermore, the defense acknowledges that the State received the newly discovered evidence during opening statements, and makes no allegation that there was any misconduct or delay in presenting the evidence to the court. Moreover, if an allegation had been made it was subject to proof and a finding of fact by the court. Id. As discussed above, there was no presentation of proof, or even argument on the motion. Because there was no misconduct predicating Davenport's motion, his argument alleging double jeopardy must fail. See People v. Collins, 48 Ill. App.3d 643, 6 Ill.Dec. 296, 362 N.E.2d 1118 (1977) (Negligent failure to comply with discovery insufficient to apply double jeopardy bar where court found that police report was unknown to the prosecutor.); Commonwealth v. Bolden, 472 Pa. 602, 373 A.2d 90 (Pa. 1977) (Holding that the failure of the prosecutor to disclose prior to trial that defendant's attorney was implicated in a conspiracy to murder the chief witness in the case was insufficient misconduct to apply the double jeopardy bar.); State v. Calhoun, 67 Wis.2d 204, 226 N.W.2d 504 (Wis. 1975) (Failure to disclose exculpatory statements insufficient.)

III.
Davenport contends that his conviction should be reversed because three jurors observed him in shackles "in and about the courtroom, courthouse and environs." (Br. at 12). Because there was no danger that he might escape, nor that he was a threat to others, Davenport contends that he should not have been observed in shackles and his conviction should therefore be reversed. *633 Davenport cites Rush v. State, 301 So.2d 297 (Miss. 1974), as authority for his position.
Davenport's reliance upon Rush is misplaced. In Rush, the defendant was taken into the courtroom in handcuffs in the presence of the special venire. The handcuffs were thereafter immediately removed. Ruling upon the defendant's contention that the handcuffs violated his right to a fair trial, this Court held that the defendant was not prejudiced and reasoned that:
It is a common-law right of a person being tried for the commission of a crime to be free from all manner of shackles or bonds, whether of hands or feet, when in court in the presence of the jury, unless in exceptional cases where there is evident danger of his escape or in order to protect others from an attack by the prisoner. Whether that ought to be done is in the discretion of the Court, based upon reasonable grounds for apprehension. But, if this right is violated, it may be ground for the reversal of a judgment of conviction.
However, the failure, through an oversight, to remove handcuffs from a prisoner for a short time or any technical violation of the rule prohibiting shackling, not prejudicial to him, is not ground for reversal.
Rush, 301 So.2d at 300.
Unlike Rush, Davenport was not observed in shackles while in the courtroom. Davenport alleged that he was seen while being transported outside the courthouse and downstairs in the courthouse; he never alleged that he was seen in the courtroom. Thus, there is less of a reason to find prejudice in the present case than there was in Rush, where the defendant was actually seen by the venire handcuffed in the courtroom for a short time and was not found to be prejudiced thereby. Moreover, in Wiley v. State, 582 So.2d 1008 (Miss. 1991), the defendant was shackled in a hallway outside the courtroom while some of the jurors were also in the hallway. The court clerk instructed that the shackles be removed, and Wiley was taken into court after the shackles were removed. This Court held that because the incident was not intentional, but was coincidental to the jury being out in the hallway, the incident was no more than a technical violation which did not require reversal.
Other jurisdictions which have explicitly held that no relief is warranted where the defendant is observed while being transported to and from the courtroom. See State v. Jasper, 506 So.2d 211, 213 (La.Ct. 1987) (no relief warranted where defendant was handcuffed solely for purposes of transport and was not handcuffed during trial); Cushing v. State, 455 So.2d 119, 121 (Ala.Cr.App. 1984) (there is no ground for mistrial where exposure to the handcuffed defendant is only a part of going to and from the courtroom).
This assignment of error is without merit.

CONCLUSION
For the foregoing reasons, the judgment of the circuit court is affirmed.
AFFIRMED.
CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SENTENCE TO BE SERVED CONSECUTIVE WITH ANY SENTENCE NOW BEING SERVED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
PITTMAN, J., not participating.