# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-KA-01762-SCT

*KRISHUN WILLIAMS AND DERRICK WILLIS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/20/1999 |
| TRIAL JUDGE: | HON. C.E. MORGAN, III |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | EDWARD C. FENWICK |
| | JAMES P. VANCE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/20/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/11/2001 |

**BEFORE McRAE, P.J., DIAZ AND EASLEY, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. This case comes on appeal from the Circuit Court of Grenada County, Mississippi. The Appellants, Krishun Williams ("Krishun") and Derrick Willis ("Derrick"), were convicted and sentenced by the jury on three counts as follows: Count I on a conspiracy charge and sentenced to 5 years, Count II on armed robbery of Jackie Hardiman ("Jackie") and sentenced to life, and Count III on capital murder and sentenced to life without parole. All sentences were ordered to run consecutively. Derrick was tried with Krishun. Derrick and Krishun had requested to be tried together and waived their right to have their trials severed.

¶2. Count I of the indictment alleged that Derrick along with Krishun and others conspired to commit armed robbery on or about November 29, 1997, through December 1, 1997.

¶3. Count II of the indictment alleged that on or about December 1, 1997, Derrick, Krishun and others robbed Jackie Hardiman, taking money from Jackie at gun point, being a pistol.

¶4. Count III of the indictment alleged that on or about December 1, 1997, Derrick, Krishun and others did willfully, unlawfully and feloniously with or without deliberate design murder Cheryl Johnson ("Cheryl") by

shooting her with a pistol while engaged in the commission of armed robbery.

¶5. On or about July 6, 1999, the trial court heard Derrick and Krishun's Motion to Sever Count II of the indictments. The trial denied Derrick and Krishun's request to sever Count II of the indictments.

¶6. The trial commenced on or about August 16, 1999, against Derrick and Krishun. During the trial, the trial court denied Derrick's Motion to Remove the leg restraints in front of the jury. The trial court also refused to suppress Krishun's statement to the law enforcement investigators.

¶7. It is from the judgment on the jury's verdict of guilty on all three counts that Derrick and Krishun now appeal to this Court.

## FACTS

¶8. Chris Crawford ("Crawford") testified that, along with Benji Ingram, Michael Turner and Jonathan Ross on December 1, 1997, they found a naked female body lying in the middle of the road. Crawford testified that he found the body between 10:30 p.m. and 11:30 p.m. that night.

¶9. Deputy Josh Dale ("Deputy Dale") testified that he received a call around 11:48 p.m. on December 1, 1997, that four guys had found a dead body while riding on a road in Grenada County. The body found was identified as Cheryl.

¶10. Earlier that same evening Deputy Dale had also received a call around 8:30 p.m. regarding Jackie. Deputy Dale testified that Jackie appeared scared. Jackie's clothes were discovered between the campground and the tennis court at the bottom of the spillway near Grenada lake.

¶11. Detective Greg Conley ("Detective Conley") testified that he worked the crime scene where Cheryl was found. Detective Conley discovered a beer bottle at the scene which had Derrick's finger prints on it.

¶12. Detective Conley testified that Krishun gave him a statement in which she stated that she along with Terry Yates ("Terry"), Lonnie Donnelly ("Lonnie"), Derrick Willis, and Roderick Eskridge ("Eskridge") were all together on the night of December 1, 1997, when they picked up Jackie Hardiman and carried her to the lake. She stated that Eskridge was the one who pulled the gun. Krishun further stated that all five of them went back to Derrick's house after taking Jackie's money.

¶13. Jackie Hardiman testified about her experience on December 1, 1997. Jackie is the alleged victim under Count II for armed robbery. She testified that Eskridge was the one who pulled the gun and robbed her. She testified that Derrick, Krishun, Lonnie Donnelly, Eskridge and Terry were all together.

¶14. Terry testified that Derrick held the gun on Jackie while Krishun got the money out of her pocket. No one tried to help keep her from being robbed. Jackie testified that she was forced to take off all her clothes. Jackie was able to run and get away. Shots were fired while she was running naked. Jackie did not know who fired the shots. Jackie got help at the campground. Jackie further testified that she was very scared and believed she would be killed.

¶15. James Morrow testified that on the night of December 1, 1997, between 8:00 p.m. and 8:30 p.m., a black female [Jackie Hardiman] without any clothes came to his trailer at the campground near the spillway. He called 911 for her.

¶16. Mary McCaskill ("McCaskill") testified that she last saw her friend, Cheryl, on the night of December 1, 1997. They met around 8:00 p.m. to 8:30 p.m. walking up to a friend's apartment. The apartment belonged to Terry Geer. They drank a few beers at the friend's apartment. Krishun showed up at the apartment where Cheryl and McCaskill were that evening. Krishun asked Cheryl to come with her because she had some male friends who wanted some females to sit with them and smoke and drink. Cheryl refused to go. Cheryl stated she needed to get some money and that she had some money at home. Krishun told Cheryl that she could get her a ride. McCaskill stated that she saw Cheryl leave with Krishun.

¶17. Krishun told Detective Conley that she saw Cheryl go into apartment number 5. Krishun tried to get Cheryl to go with her. Cheryl asked Terry to take her home to get some money. All five of them carried Cheryl to her house to get her money. Krishun stated that Lonnie hit Cheryl with a beer bottle. According to Krishun's statement to Detective Conley, they removed Cheryl's clothes and took her money. Krishun stated that Eskridge shot Cheryl. Detective Conley testified that he did not record Krishun's statement. Detective Conley testified that the .32 caliber gun was recovered from Eskridge's girlfriend's house and the .32 caliber cartridges were discovered at Derrick's house.

¶18. Dr. Steven Hayne, state pathologist, testified that the wound to Cheryl's chest was consistent with the wound made by a .32 caliber pistol. The bullet had passed through and exited the body. He testified that it appeared that the gun had been pressed against the flesh. Dr. Hayne testified that the gunshot wound was the sole cause of death. He testified that a person could live approximately 15-20 minutes or longer without medical treatment. Dr. Hayne testified that Cheryl had received a blunt injury to her head. He stated that the head injury could have been made by a beer bottle.

¶19. Terry, a co-defendant, testified at trial as to Derrick's and Krishun's involvement in the armed robbery of Jackie and the murder and robbery of Cheryl. Terry pled guilty to the armed robbery of Cheryl. The plea had been accepted but he had not been sentenced yet. The State's sentence recommendation for Terry was 30 years.

¶20. Terry testified that Derrick hit Jackie in the back of her head and then shot two times at Jackie. Terry testified that Derrick, Krishun, Eskridge, Lonnie and he were all present at the time. No one offered or tried to help Jackie. Everyone just laughed. Terry stated that they all five planned earlier that evening of December 1, 1997, at Derrick's house, to rob people that night, and they planned the robberies. Terry testified that the gun belonged to Derrick. Derrick showed the gun to him when they were planning the robberies. Terry testified that after they took Jackie's money, they bought beer and cigarettes.

¶21. Terry testified that they went back to where they picked up Derrick that night, and Krishun went down the hall and came back with Cheryl. They carried Cheryl to get some money. Everybody decided to go back to the lake with Cheryl. Eskridge had the gun and pulled Cheryl out of the car and started kicking and stomping her. Krishun grabbed Cheryl's money. Cheryl was undressed. Eskridge shot Cheryl with the gun that belonged to Derrick. Terry stated that Derrick and Krishun were present when Cheryl was robbed.

¶22. Starks Hancock ("Hancock") with the Mississippi Crime Laboratory testified as a forensic specialist in the field of firearms identification. Hancock testified that the gun recovered, fired the cartridges recovered from the murder scene.

¶23. Patricia McChristian ("McChristian"), a friend of Cheryl, testified that she saw Cheryl around 8:00-8:30 p.m. on December 1, 1997. She testified that she went with Cheryl and McCaskill to a friend's

apartment. McChristian testified that Cheryl and Krishun left together. Krishun had told Cheryl to come with her and they would give her a ride to get some money. Krishun was with four guys that night. The last time McChristian saw Cheryl was when she left with Krishun.

¶24. Both Krishun and Derrick testified in their own defense. They denied any involvement in the planning, robbery or murder. They both pinned the crime on Eskridge.

¶25. The jury returned guilty verdicts on all counts against Derrick and Krishun.

## STATEMENT OF ISSUES

**I. Did the trial court err in refusing to sever Count II, a charge of armed robbery of Jackie Hardiman, from the trial of Count III, Capital Murder of Cheryl Johnson, as to Derrick and Krishun?**

**II. Did the trial court err in requiring Derrick to wear leg restraints in the courtroom in the presence of the jury throughout the trial?**

**III. Did the trial court err in overruling Krishun's Motion to Suppress her statement made to law enforcement investigators?**

**IV. Was the jury verdict as to Count II, armed robbery of Jackie Hardiman, contrary to the overwhelming weight of evidence as to Derrick?**

**V. Did the trial Court err in overruling Krishun's Motion for New Trial and Motion for Judgment Not Withstanding the Verdict as being against the overwhelming weight of the evidence?**

## LEGAL ANALYSIS

### I. Severance of Count II

¶26. Derrick and Krishun appealed their convictions alleging that Count II, the armed robbery of Jackie Hardiman, should have been severed from the indictment for the capital murder of Cheryl Johnson. Historically, this Court had not allowed multi-count indictments until 1986 when the Mississippi Legislature adopted a multi-count statute. *Corley v. State*, 584 So.2d 769, 772 (Miss. 1991). However, the Mississippi Legislature adopted Miss. Code Ann. § 99-7-2 (2000), addressing whether two or more offenses may be tried together or must be severed.

¶27. Miss. Code Ann. § 99-7-2 (2000) reads, in pertinent part, as follows:

(1) Two (2) are more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.

(2) Where two (2) or more offenses are properly charged in separate counts of a single indictment, all such charges may be tried in a single proceeding.

(3) When a defendant is convicted of two (2) or more offenses charged in separate counts of an indictment, the court shall impose separate sentences for each such conviction.

....

¶28. This Court has stated that when a multi-count indictment has been handed down and the defendant has requested severance of the indictments, the trial court should conduct a hearing on the issue. *Eakes v. State*, 665 So.2d 852, 861 (Miss. 1995). In *Eakes*, this Court set out the trial court's determination of whether a multi-count indictment warrants severance. The State bears the burden of proving that the multi-count indictment is within the language of the statute. *Id*. The court "should consider the time period between the offenses, whether evidence proving each offense would be admissible to prove the other counts, and whether the offenses are interwoven." *Id*.

¶29. The trial court in this case held a hearing on the issue of severance of the counts of the indictment. The State alleged that the armed robbery of Jackie was one of a series of events that day. The State addressed that the trial court had already heard testimony in the first trial and the testimony of Terry that was proffered that these five people (Roderick Eskridge, Lonnie Donnelly, Krishun Williams, Derrick Willis and Terry Yates) all planned to take people out and rob them, that they did carry out the first victim and decided to go back and get another victim.[(1)]

¶30. The defense called Jackie to testify on the Motion to Sever. Jackie testified that the events occurred on December 1, 1997. Jackie testified that she did not see a gun until Eskridge got into the car. She testified that Eskridge is the one who said to go to the lake. Jackie testified that when she got in the car Terry and Krishun were also there. They then went and picked up Lonnie and Eskridge. All were together when she was forced to take off her clothes and robbed at gunpoint.

¶31. The defense argued that since Derrick and Krishun did not force Jackie to do anything that the count should be severed.

¶32. Jackie testified that she did not have insight into any prior discussions involving the defendants or any agreements made between them. Jackie testified that she did not know what all they had agreed to do between themselves before they picked her up.

¶33. The State argued that they had planned to get several people that same night and carry them to the lake and rob them. They all agreed with everything that happened that night. The State argued that they went right back to town after the first robbery to get another victim. The State argued from the record from the first trial.

¶34. The trial court stated that it considered that there was an official record of the prior cases incorporated as a part of this case, the first trial and plea bargain that arose out of the same facts as this case. The trial court overruled the Motion to Sever finding that Count II of the indictment was part of a series of events that same night.

¶35. This Court, in *Eakes v. State*, 665 So.2d at 861, restated the three options in which two or more offenses are triable in the same count and may be charged in the same indictment as addressed in Miss. Code Ann. § 99-7-2. The three options are as follows:

(1) the offenses are based on the same act or transaction; or

(2) the offenses are based on two (2) or more acts or transactions connected together; or

(3) the offenses are based on two (2) or more acts or transactions constituting parts of a common scheme or plan.

*Eakes*, 665 So.2d at 861. *See McCarty v. State*, 554 So.2d 909, 914 (Miss. 1989). The intervening time period must be insignificant as a prerequisite to both the second or third options. *Id*. Citing *McCarty v. State*, 554 So.2d at 914-16, this Court has stated that "[i]n allowing a multi-count indictment, this Court agreed with the Legislature that the offenses must be based on the same act or transaction, or be based on two or more acts or transactions, connected together or constituting parts of a common scheme or plan." *Corley v. State*, 584 So.2d at 772.

¶36. The testimony in the case sub judice established that the armed robbery and murder of Cheryl were together in both time and space. There was a plan to pick up people and rob them. On December 1, 1997, between 8:00 p.m. and 8:30 p.m. Jackie went for help. Cheryl was seen leaving with Krishun on December 1, 1997, sometime after 8:30 p.m. Two witnesses stated that they met up with Cheryl between 8:00 - 8:30 p.m. and went to a friend's apartment. The two witnesses saw Cheryl leave with Krishun from the friend's apartment. Cheryl's body was found around 10:30 p.m. to 11:30 p.m. on that same evening. Clearly, the time between the two incidents is insignificant.

¶37. We find that the trial court did not err in trying Count II (armed robbery of Jackie) and Count III (capital murder) together. The crimes constituted a common scheme or plan to rob individuals that evening.

## II. Derrick's Leg Restraints

¶38. At trial, Derrick wore a leg brace under his clothes. He did not have outward shackles, handcuffs or leg irons. The trial court ordered that Derrick would be provided street clothes and not wear prison garb. Derrick's attorney objected to the leg brace. The trial court heard Derrick's motion. The trial court allowed the leg brace and stated that the leg brace had been allowed to be used in every case before the court. The trial court found that Derrick walked into the chambers like everyone else and that the leg brace had not had an effect on other defendants.

¶39. Derrick cites *Rush v. State*, 301 So.2d 297, 300 (Miss. 1974), contending that a defendant is to be free of all manner of shackles and bonds whether of hands or feet when in the presence of the jury except where there is evident danger of escape or to protect others from attack by a prisoner. *Id*. In *Rush*, the defendant was brought into the courtroom in the jury's presence wearing visible handcuffs. This Court held that this would not prejudice the defendant's right to a fair trial. *Id.*

¶40. The State's position in the case sub judice was that leg restraints were requested as policy in all capital murder cases. There is no unqualified right to appear unrestrained before the jury. *Id.*; *Coffield v. State*, 749 So.2d 215, 218 (Miss. Ct. App. 1999). Restraining procedures ought to be at the minimum level that will address the concern before the court. *Id.* at 219. A defendant may be shackled to protect the safety of those in the courtroom, to deprive a flight-prone defendant from fleeing, or to preserve an orderly trial from a disruptive defendant. *Id.* at 218-219.

¶41. In the discussion in chambers, the trial judge in the case sub judice addressed the fact that the court had ordered that no visible restraints and no prison garb was allowed. No abuse of judicial discretion was

demonstrated. ***Puckett v. Stuckey***, 633 So.2d 978, 982 (Miss. 1993). Findings of fact by the circuit court may not be disturbed unless manifestly wrong or clearly erroneous. ***Id.*** at 982.

¶42. We find that the trial court did not err in allowing the leg restraints on Derrick. Nothing presented supports the argument that Derrick was prejudiced by the trial court's decision to allow the leg restraints.

### III. Krishun's Motion to Suppress Statement

¶43. Krishun contends that the ***Miranda*** warnings were not administered prior to her being questioned and, therefore, her statement should have been suppressed. The United States Supreme Court said in ***Miranda*** that the Fifth Amendment privilege serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being forced to incriminate themselves. ***Miranda v. Arizona***, 384 U.S. 436, 467, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

¶44. Greg Conley, investigator for the Grenada County Sheriff's Department, testified as to the statement made to him by Krishun. The statement was made December 2, 1997, in the early morning hours between 2:00 and 3:00 a.m. Krishun had been picked up and brought to the sheriff's department. Officer Conley stated that Krishun was brought in as a witness only, not arrested on any charges. He testified that she was free to go at any time. After her statement was taken, she was returned home. In the suppression hearing, Officer Conley stated that other people, believed to be witnesses, were also questioned during the same period of time as Krishun. The other victim was also questioned. Krishun's statement was not recorded. Krishun was not locked up in a cell while the other witnesses were being questioned, but lay on a couch and went to sleep. After the witnesses were questioned, Officer Conley testified that Krishun was taken home. Officer Conley could not state how long Krishun had been at the sheriff's office, but it appears it was sometime. Officer Conley stated that at no time was Krishun under arrest. According to Officer Conley, it was only after the statements from the other individuals that Krishun was later arrested.

¶45. We find that there is no indication that Krishun asked that the questioning stop. The testimony of Officer Conley was that Krishun was not a suspect but a witness at the questioning. If Krishun had been arrested or forcibly detained, then why did the sheriff's department take her back home and then turn around to come back and arrest her? This Court finds that Krishun was not detained in custody without the ability to leave. Due to the circumstances, the officer for some reason wished to question the witnesses before they carried Krishun back home. Krishun was never placed in a cell nor was there any evidence of any restraint while at the sheriff's office. The court held a suppression hearing outside the jury's presence during the trial. We find that the trial court properly found the statements to be admissible.

### IV. Derrick's Jury Verdict Contrary to the Overwhelming Evidence

¶46. Derrick asserts that the jury's guilty verdict on Count II, as to the armed robbery of Jackie, was against the weight of the evidence and, therefore, the armed robbery charge should be dismissed, or in the alternative, he should be granted a new trial on the count of armed robbery.

¶47. Jackie testified that Derrick was in the car that picked her up on the night of December 1, 1997. A gun was pulled on Jackie, and she was robbed and forced to take off her clothes. Jackie testified Eskridge had the gun. Jackie testified that Derrick did not do anything to help her. Jackie also testified that she did not know what the other people in the car had planned that night. She stated that she did not know who fired shots at her while she ran away.

¶48. Terry Yates testified that Derrick hit Jackie in the back of the head and shot at her two times. Terry testified that no one offered to help Jackie and that everyone laughed at what was going on, including Derrick. After they got Jackie's money, they all went and bought cigarettes and beer and went back to where they picked up Derrick that night.

¶49. Derrick argues that the verdict was contrary to the overwhelming weight of evidence. However, Terry's testimony placed Derrick at the armed robbery and established involvement. We find that Jackie's testimony did not clear Derrick as he alleged. She testified that she did not know if they may have had a plan that night, she did not know who fired the shots and Derrick did not do anything to help her. The testimony at trial did not establish that Derrick had abandoned the other parties after the incident with Jackie or ended his involvement. The testimony was that Derrick continued to hang out with them that evening.

¶50. This Court finds that this issue is without merit.

## V. Krishun's Motion for New Trial and Motion for Judgment

## Not Withstanding the Verdict

¶51. Krishun claims that the verdicts of the jury were contrary to the overwhelming weight of the evidence. A new trial will not be ordered unless the court is convinced that the verdict is so contrary to the overwhelming weight of evidence that allowing the verdict to stand would be to sanction an unconscionable injustice. *Groseclose v. State*, 440 So.2d 297, 300 (Miss. 1983).

¶52. The testimony of co-defendant, Terry, implicated Krishun as the one who helped plan the robberies earlier that evening and even took the money from one of the victims. According to Terry, Krishun handled the money taken from the robberies that was used to buy beer and cigarettes. Terry testified that Krishun stated that the reason to commit the robberies was because it was the first of the month.

¶53. Krishun stresses inconsistencies between Terry's statement and his testimony. However, other witnesses' testimony placed Krishun with both victims, Jackie and Cheryl, that evening.

¶54. While Terry as a co-defendant was a witness against Krishun, his was not the only evidence that linked Krishun with the crimes.

¶55. Jackie testified that Krishun was in the car before she got into the car. Krishun did not do anything to help Jackie or prevent the robbery.

¶56. Two witnesses, both friends of the victim, Cheryl, testified that on December 1, 1997, Cheryl was last seen leaving with Krishun. Krishun was with four guys. Cheryl was never seen alive again.

¶57. Krishun testified on cross-examination that she was at the lake on two occasions on December 1, 1997. She testified that she was not only there when Jackie was robbed but also when Cheryl was robbed and killed. By her own testimony, Krishun testified that after Jackie was robbed she continued to hang out with the same people that she contends actually robbed Jackie at the lake, and went back again with them to take Cheryl out to the lake. Krishun testified that she and Derrick tried to stop Eskridge from robbing Jackie or making her strip. However, Jackie testified that no one tried to help her in her testimony. After robbing Jackie, Krishun testified they went to Double Quick and bought beer and cigarettes and had a good time. When cross-examined as to why she continued to hang out with Eskridge and the others,

Krishun then claimed she was afraid of Eskridge. However, Krishun made no attempt to call the police, tell anyone she was afraid or try to get away from Eskridge. Krishun had previously testified that Eskridge had told her that he was just joking around and she believed him, and she did not think he would do anything else like that. After reviewing these facts, we find that the testimony of Krishun was not consistent with the other evidence and contained various inconsistencies itself.

¶58. Clearly, testimony from witnesses other than Terry Yates, including Krishun herself, helped to convict Krishun.

¶59. The jury is the final arbiter of a witness's credibility. *Morgan v. State*, 681 So.2d 82, 93 (Miss. 1996) . The jury weighs the weight and worth of any conflicting testimony. *Williams v. State*, 757 So.2d 953, 957 (Miss. 1999). The credibility of the testimony of Terry and the other witnesses rests with the jury to consider and resolve. The trial court even gave jury instruction 12, that stated "Terry Yates testified that he was an accomplice and the testimony of an accomplice is to be considered and weighed with great care, caution and suspicion." Therefore, this Court finds that this issue is without merit.

## CONCLUSION

¶60. The issues raised by Derrick and Krishun on appeal were not supported by the evidence at trial. This Court finds that there were no reversible errors by the lower court. Therefore, the circuit court's judgment entered on the jury verdict is affirmed.

¶61. **KRISHUN WILLIAMS COUNT I: CONVICTION OF CONSPIRACY AND SENTENCE TO FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY COSTS, FEES AND ASSESSMENTS, AFFIRMED. COUNT II: CONVICTION OF ARMED ROBBERY AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT III: CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT, WITHOUT PAROLE, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THE SENTENCES IMPOSED IN THIS CAUSE SHALL RUN CONSECUTIVELY TO ANY PREVIOUSLY IMPOSED SENTENCE.**

**DERRICK WILLIS COUNT I: CONVICTION OF CONSPIRACY AND SENTENCE TO FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY COSTS, FEES AND ASSESSMENTS, AFFIRMED. COUNT II: CONVICTION OF ARMED ROBBERY AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT III: CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT, WITHOUT PAROLE, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THE SENTENCES IMPOSED IN THIS CAUSE SHALL RUN CONSECUTIVELY TO ANY PREVIOUSLY IMPOSED SENTENCE.**

**PITTMAN, C.J., McRAE, P.J., SMITH, MILLS, COBB AND DIAZ, JJ., CONCUR. BANKS, P.J., CONCURS IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, C.J., AND WALLER, J.**

**BANKS, PRESIDING JUSTICE, CONCURRING IN THE RESULT:**

¶62. I concur in the result reached by the majority but in my view more needs to be said concerning the propriety of using a multi-count indictment in this instance. Specifically, our consideration of whether a multi-count indictment is permissible involves more than assessing the temporal proximity of the crimes charged.

¶63. In *Eakes v. State*, 665 So.2d 852, 861 (Miss. 1995), this Court reiterated the test for determining whether a multi-count indictment comports with the statutory grant of power to so indict and this Court's formulation of the standards for a fair trial. The test involves, in addition to a consideration of the time elapsed between the crimes, the questions whether the offenses are interwoven and whether evidence of one crime would be admissible in the prosecution of the other. *Id.*

¶64. Here, the crimes occurred on the same day. Obviously, they fit within the time frame deemed compliant with the statute and fairness in the previous decisions of this Court. *Patrick v. State*, 754 So.2d 1194 (Miss. 2000); *Ott v. State*, 722 So.2d 576 (Miss. 1998); *Eakes v. State*, 665 So. 2d at 861; *Allman v. State,* 571 So.2d 244 (Miss. 1990); *Blanks v. State*, 542 So.2d 222 (Miss. 1989). The question whether they are interwoven is more difficult. There is evidence that Williams and her accomplices clearly used the same scheme to accomplish the crime and identified the victims using similar characteristics. Aside from this, however, these crimes stand as a series of robberies and assaults unconnected with one another. Neither crime was necessary to the accomplishment of the other such that one can say that they are "interwoven."

¶65. The remaining question is whether evidence of one crime was admissible in the trial of the other. Evidence of the commission of a crime other than the one for which one is on trial is precluded only if the purpose or effect is merely to suggest that one's character is such that it is likely that one is guilty of the crime charged. M.R.E. 404(b). Where, on the other hand, the evidence is relevant to some fact in issue with regard to the crime charged, it is admissible if it possesses sufficient probative value that the prejudicial effect does not dictate otherwise under a M.R.E. 403 analysis. M.R.E. 403; *Watts v. State*, 635 So.2d 1364, 1368-69 (Miss. 1994).

¶66. Here Williams claims that she just happened to be present at the scene of two different crimes. The fact that she was, in fact, present at not one but two different crimes on the same day but nevertheless sufficiently separated such that she was at home between the first and second crimes tends to negate the claim that her presence was fortuitous. There was evidence indicating that, having just witnessed a robbery, she brought another victim into the same circumstances. There was testimony that the robberies were a product of her plan. Her presence at both and the fact that she was the one who made initial contact, either alone or with another, with both victims also tends to negate her claim. It follows that the evidence of each crime was in fact admissible to prove the other. While this Court stated in *Corley v. State*, 584 So. 2d 769, 772 n.1 (Miss. 1991), that the fact that evidence of one crime is admissible to prove another "has no bearing on whether the trial court should allow a multi-count indictment," clearly the Court meant by that statement that the charged crimes must always meet the statutory prerequisites for a multi-count indictment, before the court considers whether the fairness test is met. Indeed, the text accompanying the footnote teaches that the court must consider whether the evidence of each crime would be admissible in a trial of the other. *Id.*

¶67. Clearly, it is the tendency of evidence of another crime to overwhelm other evidence that is the vice to be avoided when considering whether a multi-count indictment in a particular situation meets fundamental considerations of fairness. *McCarty v. State*, 554 So.2d 909, 916 (Miss. 1989). The footnote in *Corley*

notwithstanding then, the most important factor to be considered once statutory compliance is assessed is whether the evidence of the other crime would be otherwise admissible. Because here it is admissible, I concur in the result reached by the majority.

**PITTMAN, C.J., AND WALLER, J., JOIN THIS OPINION.**

1. Eskridge had previously pled guilty to the charged of armed robbery and capital murder. His sentence after the plea was entered was appealed and affirmed by this Court in *Eskridge v. State*, 765 So.2d 508 (Miss. 2000).