996 So.2d 142 (2008)
Octzavius Nekeith WEAVER, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2007-KA-01423-COA.
Court of Appeals of Mississippi.
September 23, 2008.
Rehearing Denied December 16, 2008.
*144 Justin Taylor Cook, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before LEE, P.J., ROBERTS and CARLTON, JJ.
LEE, P.J., for the Court.

PROCEDURAL HISTORY
¶ 1. On July 18, 2006, a jury in the Hinds County Circuit Court found Octzavius Nekeith Weaver guilty of one count of possession of a firearm by a convicted felon and one count of armed robbery. Weaver was sentenced as a habitual offender to life imprisonment on each count and ordered to serve the sentences concurrently in the custody of the Mississippi Department of Corrections. Weaver now appeals, asserting the following issues: (1) the trial court erred in allowing inadmissible evidence against him; (2) the trial court erred in allowing inadmissible evidence of identification because he was denied his constitutional right to counsel; (3) his defense was prejudiced by the State's improper comments on his post-Miranda silence; (4) his trial counsel's ineffectiveness deprived him of his right to a fair trial; and (5) the cumulative errors resulted in a violation of his right to a fair trial.

FACTS
¶ 2. At approximately 6:00 p.m. on May 16, 2006, William Penn was robbed at gunpoint outside The Green Room, a pool hall in Jackson, Mississippi. Penn noted the license plate number of the car his assailant used to get away and gave that license plate number to the police. The police traced the car to 2940 Randolph Street in Jackson. Upon arriving, the police saw the vehicle in question, recovered a handgun from the bushes outside the house, and took two men, Octzavius Weaver and William Harris, into custody. In the getaway car, officers found a card bearing Penn's name and a spare key to Penn's car, which had been in Penn's stolen wallet.
¶ 3. The police called Penn at home later that same evening to identify his assailant. Penn identified Weaver from a computer-generated lineup of six possible suspects. Penn was escorted into a holding room with Harris, but he did not recognize Harris. Penn was escorted into a second room with Weaver and identified Weaver as his assailant.
¶ 4. At trial, Harris testified that the car belonged to his girlfriend, but he had been in control of the car while she was away. Harris further testified that he loaned the car to Weaver on the day of the robbery.

DISCUSSION

I. DID THE TRIAL COURT ERR IN ADMITTING IDENTIFICATION EVIDENCE?
¶ 5. In his first issue on appeal, Weaver contends the show-up identification procedure used to identify him as the assailant was faulty. In assessing the validity of identification testimony, we look to the five factors from Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). These factors were adopted by our supreme court in York v. State, 413 So.2d 1372, 1383 (Miss.1982) and are as follows: (1) "the opportunity of the witness to view the criminal at the time of the crime"; (2) "the witness'[s] degree of attention"; (3) "the accuracy of the witness'[s] prior description of the criminal"; (4) "the level of certainty demonstrated by the witness at the confrontation"; and (5) "the length of time between the crime and the confrontation." For the following reasons, *145 we find that the State has sufficiently demonstrated that Penn's identification of Weaver met the five Biggers factors.
¶ 6. Weaver was apprehended within a few feet of a weapon resembling the one used in the crime, within a few feet of the getaway vehicle used in the crime, and with Penn's personal belongings in the getaway vehicle. There was also testimony that Weaver had control and custody of the vehicle during the time of the robbery. These facts mirror the factors that were persuasive to the Court in Banks v. State, 816 So.2d 457, 460-61(¶ 16) (Miss.Ct.App. 2002). In Banks, the victim saw the assailant up close for a few seconds and made a positive identification of him soon after the assault and robbery. Id. That victim was robbed in January at 6:30 p.m. when the sun was down, and the sky was dark. Id. at 458(¶ 2). In the instant case, Penn identified his assailant two hours after seeing him for a few seconds in broad daylight.
¶ 7. Weaver also contends the show-up identification procedure violated established criminal procedure. However, Weaver never explains how the show-up identification procedure was tainted and never cites to which established principles of criminal procedure were violated. Weaver takes issue with Penn's statement that the police "told me they had him in custody," but there is no indication by either Weaver or the State that Penn was directly quoting the officer who called him. This issue is without merit.

II. DID THE TRIAL COURT ERR IN ALLOWING IDENTIFICATION EVIDENCE BECAUSE WEAVER WAS DENIED HIS CONSTITUTIONAL RIGHT TO COUNSEL?
¶ 8. In his second issue on appeal, Weaver claims the trial court erred in admitting evidence that should have been ruled inadmissible because he was exposed to the show-up identification procedure after invoking his right to counsel and before counsel was provided. The supreme court has held, "A participant in a lineup has a right to have a lawyer present only if criminal proceedings have been instituted against him." York, 413 So.2d at 1383.
¶ 9. In the instant case, Weaver was not "the accused," and criminal proceedings had not yet been initiated against him at the time of the identification procedure. Weaver was merely a suspect at the time of the visual identification by Penn. See Thompson v. State, 726 So.2d 233, 236-37 (¶¶ 17-18) (Miss.Ct.App. 1998). This issue is without merit.

III. WAS WEAVER'S DEFENSE PREJUDICED BY IMPROPER STATEMENTS BY THE STATE CONCERNING HIS POST-MIRANDA SILENCE?
¶ 10. In his third issue on appeal, Weaver claims the State made two improper statements about his post-Miranda choice to remain silent. In regard to the first statement at issue, we note that Weaver failed to object during trial. Regardless of the procedural bar, we will address the merits.
¶ 11. The first statement occurred during the redirect examination of Detective Kent Daniels. Detective Daniels was asked the following by the State: "Did [Weaver] ever say he didn't do it?" Detective Daniels responded, "No, he didn't." We note that immediately prior to this statement, during cross-examination, Weaver's counsel had asked Detective Daniels the following: "And basically to this day the defendant hasn't given any incriminating statements against himself, has he? He's never said he did it or anything; is that true?" Detective Daniels responded, "Correct." The supreme court has held "a defendant cannot complain of *146 evidence he himself brings out." Pruitt v. State, 807 So.2d 1236, 1241(¶ 14) (Miss. 2002). This issue is without merit.
¶ 12. The second statement at issue was asked by the State to Detective Daniels on redirect: "At any time has Octzavius Weaver provided you with any alibi or any alternative theory to this investigation?" According to the record, the question was withdrawn after Weaver's counsel's objection, and Detective Daniels never answered the question. Therefore, no comment was made before the jury of Weaver's decision to remain silent. Weaver contends that the jury could have inferred from the question that Weaver had chosen to remain silent.
¶ 13. In Gossett v. State, 660 So.2d 1285 (Miss.1995), a police officer was prevented by an attorney from making a comment about the defendants' post-Miranda silence. Id. at 1291. On subsequent appeal, the defendants argued the officer just coming close to making the comment breached their respective Fifth Amendment rights against self-incrimination. The supreme court, however, held that:
It is never proper to comment on an accused's post-Miranda silence, and normally it will be regarded by this Court as reversible error. In the case at hand, however, it is arguable whether [the officer's] response ever indicated that the defendants refused to make any comments. The prosecutor anticipated an improper response which would have likely alluded to post-arrest silence, but the witness was effectively prevented from actually testifying to such. It is questionable from this standpoint whether any error had occurred as the witness was silenced before actually making an improper comment. If the response had clearly referred to post-Miranda silence, the error would still have been deemed harmless beyond a reasonable doubt in light of the overwhelming evidence in support of the defendants' guilt in this case.
Id. (internal citations omitted).
¶ 14. In the instant case, any deductions that the jurors may have drawn as a result of the unspoken comments by Detective Daniels are considered harmless in light of the overwhelming weight of evidence of Weaver's guilt. This issue is without merit.

IV. WAS WEAVER'S TRIAL COUNSEL INEFFECTIVE?
¶ 15. In his fourth issue on appeal, Weaver claims his trial counsel was ineffective. In order to successfully claim ineffective assistance of counsel, Weaver must demonstrate that (1) his attorney's performance was deficient, and (2) such deficient performance deprived him of a fair trial. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is a strong presumption that the attorney's conduct fell within the wide range of reasonable professional assistance. Hiter v. State, 660 So.2d 961, 965 (Miss.1995). Weaver must show that, but for his attorney's performance, he would have received a different outcome at the trial level. Stringer v. State, 627 So.2d 326, 329 (Miss.1993).
¶ 16. Weaver's first instance of his counsel's ineffectiveness was Weaver's appearance on the first day of trial in prison attire. During pretrial motions, the trial court gave Weaver the opportunity to object to wearing prison attire, and he chose not to. After the first day of trial, clothing was found for Weaver. The supreme court has held numerous times that a defendant appearing in a prisoner's uniform or clothing is not necessarily reversible error, stating:
Furthermore, a review of the case law indicates this Court will not reverse a *147 defendant's conviction just because the jury may have observed the defendant in prison attire. Davenport v. State, 662 So.2d 629, 632-33 (Miss.1995) (holding jury's coincidental viewing of defendant in shackles while being transported outside the courthouse and downstairs in the courthouse was not reversible error); Wiley v. State, 582 So.2d 1008, 1014 (Miss.1991) (holding technical violation of jurors coincidentally viewing defendant in shackles in the courthouse hallway was no more prejudicial than defense counsel's reference to defendant being in jail); Coleman v. State, 378 So.2d 640, 645 (Miss.1979) (holding juror's viewing of defendant in prison garb in the jail complex did not constitute reversible error in absence of showing that the jury was prejudiced); Rush v. State, 301 So.2d 297, 300 (Miss.1974) (holding deputy sheriff's bringing defendant in courtroom in jury's presence while handcuffed did not result in any prejudice to his right to fair trial).
Puckett v. State, 737 So.2d 322, 339-40(¶ 46) (Miss.1999). Consequently, Weaver's argument is insufficient to establish ineffective assistance by his trial counsel.
¶ 17. Weaver's second instance of the alleged ineffectiveness of his trial counsel concerns his trial counsel's failure to request a suppression hearing for any pretrial identification. Prior to trial, Weaver's counsel objected to the introduction of the identification of Weaver by Penn. Weaver's trial counsel stated that he thought a motion for a suppression hearing had been previously filed, but he was mistaken. As we have already discussed, the overwhelming evidence against Weaver is indicative that even if the prior identifications were stricken, there would be no alteration of the outcome of the trial. We cannot find that the failure of Weaver's trial counsel to properly file a motion to suppress was so deficient as to result in an unfair trial.
¶ 18. Weaver's third instance of the alleged ineffectiveness of his trial counsel was his trial counsel's failure to move for a mistrial when the State questioned Detective Daniels concerning Weaver's post-Miranda silence. The concern with this line of questioning has been addressed previously in Issue III and found to be without merit.
¶ 19. Weaver's final instance of the alleged ineffectiveness of his trial counsel was his trial counsel's failure to file a motion for a new trial or a judgment notwithstanding the verdict. We do note that Weaver's trial counsel did not file a timely notice of appeal, but Weaver was ultimately granted an out-of-time appeal. According to Jackson v. State, 423 So.2d 129, 131 (Miss. 1982), where the grounds for an objection on appeal are included in the record, our review on appeal is not necessarily barred for failure to raise the grounds in a motion for a new trial or a JNOV. Even if Weaver's trial counsel was deficient for failing to file post-trial motions, Weaver has not shown this Court how that deficiency resulted in prejudice to his defense since his issues on appeal were included in the record.

V. WAS THERE CUMULATIVE ERROR THAT DEPRIVED WEAVER OF A FAIR TRIAL?
¶ 20. Finding each of Weaver's arguments to be without merit, we consequently do not find any cumulative error that would necessitate a reversal. This issue is without merit.
¶ 21. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, POSSESSION OF A FIREARM BY A CONVICTED FELON, AND COUNT II, ARMED ROBBERY, AND SENTENCED *148 AS A HABITUAL OFFENDER TO LIFE IMPRISONMENT FOR EACH COUNT WITH SENTENCES TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE, PROBATION, REDUCTION OR SUSPENSION OF SENTENCE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.