767 So.2d 302 (2000)
Michael Ray GENRY, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01150-COA.
Court of Appeals of Mississippi.
September 12, 2000.
*305 David Clay Vanderburg, Attorney for Appellant.
Office of the Attorney General by W. Glenn Watts, Attorney for Appellee.
EN BANC.

MODIFIED OPINION ON MOTION FOR REHEARING
BRIDGES, J., for the Court:
¶ 1. On petition for rehearing, this opinion is substituted for the previous opinion issued by this Court.
¶ 2. Appellant Michael Ray Genry appeals his conviction on three felony counts from the Circuit Court of Panola County. Genry was convicted burglary of a building other than a dwelling and two counts of aggravated assault. Finding no merit to Genry's assignments of error, we affirm on all counts.

I. FACTS
¶ 3. After being convicted in a criminal proceeding in Harrison County, but prior to being sentenced, Michael Ray Genry escaped confinement, stole a truck, eluded law enforcement officers, and fled as far as Panola County. On the evening of June 16, 1997, Genry entered a convenience store in Panola County owned and operated by Amos Harrison. Inside the store was Harrison, two of his clerks, and Jerry Estridge, a friend of the owner. After entering the premises, Genry was informed that the business was closed. He asked if he could purchase gasoline for his truck, but was told that the store was closed and was given directions to the nearest open business where he could purchase *306 fuel. Genry left only to return a short time later reporting that his truck had broken down. He asked for and received permission to use the telephone inside the store so that he might telephone his employer.
¶ 4. Estridge, an off-duty state trooper employed by the Mississippi Highway Safety Patrol, became suspicious of Genry's unusual behavior and quietly directed Harrison to retrieve a firearm that was kept on the premises. Shortly thereafter, Genry pulled a butcher knife he had concealed on his person, grabbed one of the store employees, put the knife to her throat, and informed those present that his intentions were to rob the store. At that point, Estridge produced the previously-hidden firearm and pointed it at Genry. Genry released the employee dropping the knife to the floor. Despite repeated demands to surrender, Genry fled the store with Trooper Estridge in pursuit. Genry ran to the stolen truck and proceeded to drive back in the direction of the store. Upon seeing Trooper Estridge standing in the parking lot, Genry steered towards him and accelerated the speed of the truck, causing Estridge to run for safety. Genry's apparent attempts to run Estridge down resulted in the truck heading toward a utility pole. As Genry attempted to avoid hitting the pole, he maneuvered the truck into a ditch. He jumped from the vehicle and fled on foot. Shortly thereafter, he was captured.
¶ 5. After Genry's arrest, he was returned to the custody of law enforcement officials in Harrison County, where he was ultimately sentenced for his earlier conviction in that jurisdiction. Genry, as a result, found his way to the state prison facility in Parchman. Genry was indicted on July 31, 1997, by a Panola County grand jury on four counts related to the incident at Amos Harrison's store. The first count was for grand larceny for the theft of the truck he used to flee from Harrison County to Panola County. The second count was for burglary of a building other than a dwelling. That charge arose out of his activities in the convenience store. The third count was for aggravated assault connected with the knife attack on the store employee. The final count was for aggravated assault arising out of Genry's alleged attempt to run Trooper Estridge down with the stolen truck.
¶ 6. At the conclusion of the evidence, the trial court granted the defendant's motion to dismiss the first count of the indictment, based on evidence showing that the truck was stolen in Harrison County. The court concluded that proper venue for that charge was in Harrison County and not Panola County. The remaining three counts were submitted to the jury and the jury found Genry guilty on each count. Genry's post trial motion for relief from his conviction at the trial level was unsuccessful and this appeal ensued.

II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS FOR VIOLATION OF APPELLANT'S RIGHTS TO A SPEEDY TRIAL.
¶ 7. Genry first challenges the trial court's denial of his motion to dismiss his indictment based on a claim that he was denied his constitutional right to a speedy trial. The trial court, after conducting a hearing on the motion, denied Genry's motion, and Genry now urges that this was error. As we have observed, Genry was arrested in connection with these charges on the same day the offenses allegedly occurredJune 16, 1997. He was detained briefly pursuant to that arrest, however, because Panola County officials immediately surrendered custody of Genry to Harrison County officials pursuant to an outstanding arrest warrant for his escape from custody in that county. Genry was indicted in Panola County on July 31, 1997, but for reasons that the State was unable to explain, Genry was not served with a copy of the indictment until April 24, 1998. He was provided appointed counsel shortly after, but prior to that time had not been *307 represented by an attorney as to the Panola County incident.
¶ 8. Genry alleges that the delay between the date of the criminal incident and the time he was finally served with the indictment constituted an inexcusable delay entitling him to dismissal.
¶ 9. The Sixth Amendment guarantees an accused "the right to a speedy... trial." U.S. Const. amend. VI. Unlike Mississippi's statutory speedy trial protection which measures from arraignment, constitutional considerations are measured from the time of arrest. Noe v. State, 616 So.2d 298, 300 (Miss.1993). A delay of more than eight months from arrest to trial has been declared by the Mississippi Supreme Court to be presumptively prejudicial. Jackson v. State, 614 So.2d 965, 969 (Miss.1993). In this case, Genry was arrested on June 16, 1997 and brought to trial on August 3, 1998, a delay substantially in excess of eight months. This presumptive delay shifts the burden to the State to demonstrate that, when considered in the light of the factors of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the delays did not work to deny the defendant a fundamentally fair trial. See Smith v. State, 550 So.2d 406, 408 (Miss.1989) (citing Barker v. Wingo, 407 U.S. at 530, 92 S.Ct. 2182, and stating that the length of delay is a triggering mechanism and until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance).
¶ 10. The United States Supreme Court set out four considerations that bear on whether any particular delay violates Sixth Amendment protections. Barker v. Wingo, 407 U.S. at 533, 92 S.Ct. 2182. The factors are: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant has asserted his right to a speedy trial; and (4) whether the defendant has been prejudiced by the delay. Id. at 530, 92 S.Ct. 2182. None of these factors are dispositive, but they must be considered together to determine whether, on balance, it appears that the defendant's right has been violated. Under the Mississippi case of Smith v. State, the delay of over a year in this case necessarily requires that we undertake an analysis of those relevant factors under Barker v. Wingo that bear on the question. Smith, 550 So.2d at 408.

A. Length of Delay
¶ 11. As we have already observed, the delay in this case from arrest to trial was 413 days. The State presented no evidence at the hearing indicating that Genry was responsible in any way for the delays in bringing his case to trial. Since the State had the burden on that issue and since the delay was substantial, we are constrained to weigh this factor rather heavily against the State. Id.

B. Reason for Delay
¶ 12. Again, the State offers no justification for delaying substantially over one year in bringing Genry to trial. Genry was, at all times after his arrest, incarcerated within the boundaries of the State and was, thus, readily available for pre-trial proceedings and trial with only a minimum of effort by Panola County law enforcement officers and prosecutors. We also conclude that this factor must be weighed against the State.

C. Assertion of the Right to a Speedy Trial
¶ 13. From the time of his arrest until he was formally served with a copy of the indictment, there is no indication that Genry was aware that he was in actual jeopardy for his activities in Panola County. Genry was served with the indictment on Friday, April 24, 1998, and his counsel filed a motion to dismiss for denial of a speedy trial on May 28, 1998. We, therefore, conclude that Genry did everything reasonable to timely advance his claim that he had been denied a speedy trial and we must weigh this factor in Genry's favor.

*308 D. Prejudice Arising by the Delay
¶ 14. We turn, finally, to the fourth issue of Barker v. Wingo the requirement that the defendant demonstrate some prejudice arising out of the delay. Wingo, 407 U.S. at 532, 92 S.Ct. 2182. Several factors were suggested by the United States Supreme Court in its Barker v. Wingo opinion that might demonstrate that a defendant has been prejudiced by unreasonable delays in bringing him to trial. These include: (i) oppressive pretrial incarceration; (ii) anxiety and concern of the accused; and (iii) possibility that the defense was impaired. Id.
¶ 15. It is in the area of demonstrating prejudice arising out of the delay in bringing him to trial that Genry's speedy trial claim begins to falter. He clearly suffered no personal prejudice by being deprived of his freedom in advance of trial, since his incarceration arose out of criminal activity not related to the Panola County incident. By the same token, he was not deprived of an opportunity to pursue gainful employment by virtue of an involuntary incarceration or because of reluctance of an employer to retain a worker living under the shadow of criminal charges. Neither was he exposed to opprobrium or suspicion in the community arising from these unresolved criminal accusations.
¶ 16. At the hearing, Genry failed to demonstrate that any evidence or witnesses had been lost or that some particularly helpful witness had suffered from memory fade or lapse in the time from his arrest and the hearing date on the motion. Genry could only express his fear that, since he had been unaware of the pending charges for so long, it might prove difficult or impossible at such a late date to gather evidence helpful to the defense. We conclude that Genry's then-unfounded apprehension of the difficulties he might face in gathering and presenting evidence tending to establish his innocence was not enough, of itself, to demonstrate any actual prejudice.
¶ 17. We note that a fairly substantial additional passage of time occurred between the speedy trial hearing on May 28, 1998 and the actual commencement of trial on August 3, 1998. It can be fairly assumed that, during that time, Genry, through his attorney, was diligently pursuing evidence necessary to present an effective defense to the charges. If, during this time of defense preparation, Genry's fears of difficulty actually materialized, we see no reason why the speedy trial motion could not have been renewed closer to the actual trial date to make the court aware of matters that could not, even with the exercise of reasonable diligence, have been known for certain at the earlier hearing. Our review of the record, however, informs us that Genry did not, at some later date, attempt to present further evidence of prejudice in preparing an effective defense to the charges arising out of the delays.
¶ 18. We find that the complete absence of any evidence of actual prejudice to the defendant arising out of the delay from June 16, 1997 to August 3, 1998 in bringing Genry to trial outweighs any other considerations that weigh against the State. We, therefore, conclude that the trial court did not err when it denied Genry's motion to dismiss the indictment based on a perceived violation of his right to a speedy trial under the Sixth Amendment.

III. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A DIRECTED VERDICT, JURY INSTRUCTION D-1 AND JUDGMENT NOTWITHSTANDING THE VERDICT.
¶ 19. Genry claims that the evidence to establish one or more of the essential elements of his guilt was so lacking on all three charges that the trial court erred in failing to direct a verdict of acquittal or in denying his post-verdict motion for a judgment notwithstanding the verdict. Such a challenge to the State's proof raises the issue of the sufficiency of the evidence of guilt. The trial court, in considering the issue, is charged to view *309 all of the evidence before the court in the light most favorable to the prosecution. McClain v. State, 625 So.2d 774, 778 (Miss. 1993). Only if it reasonably appears to the trial court that, because of the lack of probative evidence on one or more of the necessary elements of the crime charged, a reasonable and fair minded juror could only find the defendant not guilty should the trial court intercede. Horton v. State, 726 So.2d 238 (¶ 15) (Miss.Ct.App.1998). On those occasions that the trial court declines to intercede and the defendant subsequently appeals that decision, an appellate court is obligated to review the evidence in that same light and may overturn the trial court's decision only if the appellate court is convinced that the trial court was manifestly incorrect. Id. Because Genry has challenged the sufficiency of the evidence of guilt as to all three counts for which he was convicted, we must consider them individually.

A. The Burglary Conviction
¶ 20. On appeal, Genry contends that the State failed to prove that Genry's means of gaining entry to the store premises constituted a "breaking," an element required to sustain his conviction for burglary. According to Genry, the evidence overwhelmingly established that his entry into the business was permissive. In support of his position, he points to evidence that he was given permission to use the telephone and was offered assistance and advice by those inside the store. In opposition, the State maintains that the record clearly shows that Genry "broke" into the store by way of subterfuge. The State further argues that the evidence was sufficient to support a "constructive breaking."
¶ 21. To support a burglary conviction, the State was required to prove that Genry broke and entered the convenience store with intent to steal or commit a felony. Miss.Code Ann. § 97-17-33 (Rev.1994). In this context, "breaking" has been defined by the Mississippi Supreme Court as "any act or force, however, slight, `employed to effect an entrance through any usual or unusual place of ingress, whether open, partly open, or closed.'" Smith v. State, 499 So.2d 750, 752 (Miss.1986) (quoting State v. Jolly, 297 N.C. 121, 254 S.E.2d 1 (1979)). In this case, it is clear that Genry did not violently or forcibly "break" his way into the convenience store. However, that an accused does not actually break anything in the act of entering a premises is not required. The Mississippi Supreme Court has embraced the concept of "constructive breaking" which occurs when an accused's entry into the questioned premises was gained by his use of threat, deceit, fraud or trickery. Templeton v. State, 725 So.2d 764 (¶ 6) (Miss.1998).
¶ 22. In Templeton, the defendant persuaded a woman to admit him into her residence and then murdered her. Id. at (¶ 2). After being charged with capital murder for a killing in the commission of a burglary, Templeton pled guilty in exchange for a recommendation of life sentence without parole, allowing him to avoid the possibility of receiving the death penalty. Id. at (¶ 1). Subsequently, Templeton sought to set aside his plea on the basis that he received ineffective assistance of counsel. Arguing that he could not possibly have committed a burglary on the facts of the case and only an incompetent attorney would have permitted him to plead guilty to a crime that contained burglary as an essential component, Templeton pointed to the lack of any evidence that he broke into the woman's residence. Id. at (¶ 1). The supreme court determined that Templeton had used fraud or deceit to persuade his victim to allow him to her home and that on those facts, his entry was classified as a constructive breaking. Id. at (¶ 6).
¶ 23. In a more recent case, Haynes v. State, 744 So.2d 751 (Miss.1999), the Mississippi Supreme Court addressed the question of constructive breaking where the defendant had entered a retail store during normal business hours. Haynes, *310 however, then hid in the restroom until after the business closed. Haynes was discovered inside the closed store attempting to steal merchandise. Id. at (¶ 4). On appeal from his burglary conviction, Haynes argued that while he may have been found engaging in criminal behavior of some sort, he had not "broken" into the store and that there was no evidence of him "breaking and entering" the store in question. Id. at (¶ 2). The supreme court affirmed Haynes's conviction, holding that a reasonable jury could have concluded that "Haynes' request to use the restroom was in fact a subterfuge to stay in the store unlawfully past its closing hour in order to commit larceny in the store once its employees had left." Id. at (¶ 7). The court further determined that the jury could have reasonably found that Haynes's act of "entry into the restroom, and his trespassing in the store past its closing hour" were accomplished by "deceit, pretense, or fraud," and therefore, constituted "a constructive breaking of the store...." Id.
¶ 24. In an older case, Holderfield v. State, 215 Miss. 564, 61 So.2d 385 (1952), the defendant entered a closed business through a window and stole money by forcibly opening a juke box and cigarette machine. Id. at 385. The business owner indicated that Holderfield, a former employee, may have had authority to enter the premises, day or night. Id. At trial, the State obtained a jury instruction that, even if the jury concluded that Holderfield had general permission to enter the building, it could convict of burglary if the jury believed he entered the building on this specific occasion with the unlawful intent to steal. Id. at 386. Reversing Holderfield's conviction, the supreme court determined that a jury issue was presented "as to whether or not [the owner] had given the appellant consent to enter the building as he did." Id. at 387. The supreme court held that if Holderfield had permission or consent by the owner to enter the building, there could be no burglary. Id.
¶ 25. The difference between the Holderfield case and this case is that the testimony, according to the supreme court, of whether or not Holderfield had permission to enter the closed building was equivocal and contradictory. Furthermore, the supreme court held that the State's instruction that jury could find that the owner had given Holderfield permission to enter the building and still find that he was guilty of burglary was erroneous and was a not a correct statement of the law. Id. at 386. In the Mississippi Supreme Court's later cases of Templeton and Haynes, it was determined that "permission" to enter the respective home and building had not been given because the defendants used deceit, fraud or pretense to gain "permission" to enter. There is no accusation in the Holderfield case that deceit, fraud or pretense was used to gain entry to the building.
¶ 26. In this case the evidence shows that Genry knew the store in question was closed for business. Nevertheless, Genry shrewdly gained entry into the convenience store using the fabricated excuse that he was having trouble with his vehicle and needed to telephone his employer. Such was made clear when Genry, after putting his knife to the store employee's throat, announced to those in the store: "I've been f y'all; this is a f robbery."
¶ 27. Pursuant to the principles of Templeton and Haynes and based on the facts in this case, it was reasonable for the jury to find Genry guilty of burglary. The evidence was such that a reasonable jury could have inferred that Genry used deceit, fraud or false pretense to gain entry into the convenience store to achieve his purpose in robbing the store of its cash on hand. For these reasons, we affirm the jury's verdict and the sentence imposed on Genry on this issue.

B. Aggravated Assault Inside on Store Employee
¶ 28. Genry contends that there was insufficient evidence adduced at trial *311 to support his conviction for aggravated assault against the store employee. He relies on the Mississippi Supreme court cases of Murray v. State, 403 So.2d 149 (Miss.1981) and Gibson v. State, 660 So.2d 1268 (Miss.1995), and asserts that this conviction should be reversed and remanded for sentencing for simple assault.
¶ 29. The Mississippi Code delineates for us the definition of aggravated assault as follows:
A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm....
Miss.Code Ann. § 97-3-7(Supp.1999) (emphasis added). As such, a person is guilty of the crime of aggravated assault whether there is an attempt to cause the serious bodily injury or whether a person actually causes serious bodily injury to another. Id.
¶ 30. The Mississippi Supreme Court has "defined `attempt' to mean `an attempt to do a certain thing, and some actual overt effort to put the intent into effect.'" Gibson, 660 So.2d at 1270 (quoting Brown v. State, 633 So.2d 1042 (Miss.1994)) (other citations omitted). Moreover, the supreme court has stated that "the act must be such as will apparently result, in the usual and natural course of events if not hindered by extraneous causes, in the commission of the crime itself, and an act apparently adapted to produce the intended result is sufficient to constitute the overt act essential to an attempt." Gibson, 660 So.2d at 1270 (citing Bucklew v. State, 206 So.2d 200, 202 (Miss.1968)).
¶ 31. In the cases relied upon by Genry, Murray and Gibson, the supreme court determined, respectively, that the evidence was insufficient to support aggravated assault charges. In Murray, the defendant used a shank pointed towards a prison officer to compel the officer to give up his keys. Murray, 403 So.2d at 149. Murray was convinced by fellow inmates to give up his endeavor, which he did. Id. at 151. In that case, the supreme court determined that it could not say that the defendant had unequivocal intent to stab the officer, even though he had the means and the opportunity to do so. Id. at 152-53.
¶ 32. In Gibson, the defendant pointed a gun at the chest of a police officer. Gibson, 660 So.2d at 1268. After the officer demanded that he lower his weapon, the defendant complied. There the supreme court stated:
Gibson was ordered to drop the gun by the officer at which the gun was pointed. The record does not reflect that Gibson was aware of any other officers in the vicinity, so Gibson, at least in his own mind, had the advantage. We do not know, from the record, why Gibson did not shoot the officer. After all he had the means and every opportunity to do so. The State's suggestion that the officer's command to drop the weapon was an extraneous event which prevented Gibson from shooting the officer is far fetched
Id. at 1270.
¶ 33. Lacking in those cases was evidence of unequivocal intent to cause serious bodily injury to the victim. The evidence in our case is distinguishable from Murray and Gibson. Testimony at trial demonstrated that Genry entered the store under the false pretense of experiencing mechanical trouble with his vehicle. As the store owner and his employees worked to assist Genry, Genry grabbed Hentz, the store employee, wrapped one arm around her and used his other arm to place a butcher knife at her throat. Hentz testified that Genry held the knife so that it touched her throat. As he grabbed Hentz, he announced he was "fooling" those inside the store and intended to rob the establishment. *312 His action in placing the knife at her throat was an overt act indicating his intent on inflicting serious bodily injury with a deadly weapon. With the knife at her throat, Genry also constrained the employee's movement with his body and arm. His actions constituted more than idle threats.
¶ 34. The extraneous event prohibiting Genry from carrying out his intended aggravated assault on the store employee was Estridge's display of a weapon. The fact that Estridge's weapon could inflict serious bodily injury on Genry apparently led to his flight from his attempted aggravated assault and his attempt to steal money from the store. While not conclusive evidence of his intent to harm the store employee, the fact that a short time later he attempted to run down Estridge with the truck he was driving adds credence to the jury's decision that he was guilty of aggravated assault on the store employee because it evinces his state of mind, that is, he was willing to inflict serious bodily injury on anyone who interfered with his plans or escape.
¶ 35. We are obligated to consider the evidence in the light most favorable to sustaining the verdict. Noe v. State, 628 So.2d 1368, 1369 (Miss.1993). In so doing, we rule that there was sufficient evidence produced at trial which the jury could reasonably determine that Genry was guilty of aggravated assault.

C. Aggravated Assault on Trooper Estridge
¶ 36. Under this assignment of error, Genry contends that even taking the evidence in a light most favorable to the verdict, the evidence is insufficient to support his conviction of aggravated assault on Trooper Estridge. Genry explains that he was attempting to leave the area and was not trying to hit Estridge. We are not convinced. The evidence indicates that had Trooper Estridge not moved from the path of the vehicle driven by Genry, Genry would have likely completed his attempt at injuring Estridge. There can be no doubt that a motor vehicle used for the purpose of intentionally running over another person is a deadly weapon within the contemplation of this State's aggravated assault statute. Miss.Code Ann. § 97-3-7(2)(Supp.1998). As to this assignment of error, we again find that a reasonable jury, on the evidence presented, could have found Genry guilty of aggravated assault on Estridge. Accordingly, we affirm this issue.

IV. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A NEW TRIAL.
¶ 37. Genry alternatively argues that the trial court erred in denying his motion for a new trial on the basis that the verdicts were against the weight of the evidence. A new trial motion on this ground is committed to the sound discretion of the trial court and should be granted only if the trial court concludes that to allow the verdict to stand would work a manifest injustice. Fairchild v. State, 459 So.2d 793, 798 (Miss.1984). In determining whether the verdict is contrary to the weight of the credible evidence, the trial court necessarily has a measure of discretion. White v. State, 732 So.2d 961 (¶ 20) (Miss.1999). On appeal from denial of such a motion, this Court may intercede only if we are satisfied that the trial court abused its discretion and that a new trial is necessary to avoid a substantial injustice. Id.
¶ 38. In this case, the State presented credible evidence as to each of the essential elements of the crimes for which Genry was convicted. There was, in fact, little or no affirmative evidence in the record pointing towards Genry's innocence. Having already concluded that there was sufficient evidence to convict, we can discover no countering evidence in the record weighing so heavily in favor of acquittal that we would feel compelled to intercede. This issue is, in our view, without merit.

*313 V. THE TRIAL COURT ERRED IN GRANTING THE STATE'S MOTION REQUIRING APPELLANT TO REMAIN IN LEG IRONS AND RESTRAINTS WHILE ON TRIAL IN FRONT OF THE JURY.
¶ 39. Finally, Genry contends he did not receive a fair trial because he was prejudiced when the jury witnessed him bound by leg irons during the trial. The trial court conducted an inquiry into the necessity for some form of restraint at which the State produced evidence that Genry had previously escaped from confinement in Harrison County. The State further produced testimony that, on one trip to Panola County from the correctional facility where Genry was being held on the Harrison County conviction, a routine search of his belongings revealed a hidden handcuff key. Based on this evidence and in consideration of the nature of the charges against Genry arising out of the Panola County incident, the trial court determined Genry to be a legitimate flight risk and approved the use of leg iron restraints. The trial court cautioned law enforcement officials not to require Genry to move about the courtroom in the jury's presence, but rather to ensure that Genry was seated at counsel's table at all times when the jury was in the courtroom. This was a commendable and proper effort by the trial court to minimize as much as possible the negative impact of Genry's restraint.
¶ 40. Nevertheless, Genry now complains on appeal that the trial court erred in approving the use of these restraints, citing Rush v. State, 301 So.2d 297 (Miss.1974). The Rush decision recognized that there was, in general terms, a right described as follows:
[A] common-law right of a person being tried for the commission of a crime to be free from all manner of shackles or bonds, whether of hands or feet, when in court in the presence of the jury....
Id. at 300. However, the court in Rush went on to recognize that, "in exceptional cases where there is evident danger of ... escape or in order to protect others from an attack by the prisoner," restraints would be permissible, the matter being vested in the trial court's sound discretion.
Id.
¶ 41. We are satisfied that Genry's past history of escape from confinement on one occasion and evidence that he had secreted in his belongings a device useful in an additional escape attempt was sufficient information for the trial court to reasonably conclude that there was a danger of escape if Genry were not restrained. Having so concluded, the trial court then properly took pains to minimize the prejudicial impact of this reasonably necessary restraint. We conclude that the trial court acted within its sound discretion in the matter and decline to find reversible error on this issue.
¶ 42. THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY OF CONVICTION OF COUNT II BURGLARY, COUNT III AGGRAVATED ASSAULT, COUNT IV AGGRAVATED ASSAULT AND SENTENCE ON COUNT II OF SEVEN YEARS TO RUN CONCURRENTLY WITH THE SENTENCE IN COUNT III; SENTENCE OF TWENTY YEARS ON COUNT III TO RUN CONSECUTIVELY WITH THE SENTENCE IMPOSED IN HARRISON COUNTY CASE # B2401-96-00329; AND SENTENCE OF TWENTY YEARS ON COUNT IV TO RUN CONCURRENTLY WITH THE SENTENCES IMPOSED IN COUNTS III AND II ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PANOLA COUNTY.
LEE, MOORE, AND PAYNE, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. McMILLIN, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY *314 KING AND SOUTHWICK, P.JJ. AND THOMAS, J. MYERS, J., NOT PARTICIPATING.
McMILLIN, C.J., dissenting:
¶ 43. I respectfully dissent as to the affirmance of Genry's burglary conviction and the aggravated assault charge.

I.

Burglary
¶ 44. The majority affirms the burglary conviction against Genry on the theory that he committed a constructive breaking into the premises. The logic of doing so seems faulty on two fronts.
¶ 45. First, there is no evidence to support a conclusion that Genry practiced any subterfuge to gain entrance to the building. Insofar as the record reveals, he simply walked in. Only after he had been admitted, did he request permission to use the telephone on the pretext that he needed to call his employer regarding mechanical problems with his vehicle. This case is, therefore, distinguishable from Templeton v. State because, in Templeton, the supreme court concluded as fact that Templeton had practiced some fraud or deceit to persuade his victim to admit him into her residence. Templeton v. State, 725 So.2d 764 (¶ 6) (Miss.1998).
¶ 46. The later decision of the supreme court in Haynes v. State, 744 So.2d 751 (Miss.1999) raises other considerations that, at first blush, might indicate that this conviction should be affirmed. However, in the end, I do not think that it does. In that case, the State presented evidence that Haynes entered a store during normal business hours but secreted himself in a restroom until after closing, at which time he re-emerged and was caught in the act of looting the store. Id. at (¶ 3). The supreme court, relying on Templeton, upheld a burglary conviction, finding that Haynes' acts of hiding in the restroom and "trespassing in the store past its closing hour" were sufficient to support a finding of constructive breaking. Id. at (¶ 7). Haynes seems to represent a judicial expansion of the definition of breaking to include fraudulent acts to remain on the premises past the time an otherwise-apparently-permissive entrance would have expired. We have no such factual situation in this case. Genry did not conceal himself on the premises nor is there any indication that, at any time before he openly commenced his criminal enterprise, those in control of the premises had terminated his permissive entry such that he had become the same kind of trespasser as Haynes.
¶ 47. Certainly, something more than the impurity of the defendant's motive upon entry must be shown in order to convert a facially-legal entry into an unauthorized "breaking," otherwise every shoplifter could be prosecuted for burglary, and a charge of disturbing the peace against an overly-zealous customer who entered for the purpose of lodging a complaint could be escalated to burglary.
¶ 48. In this case, the State was obligated to show either (a) that Genry physically broke into the building, or (b) that he gained entry by practicing some subterfuge. The proof will not support either proposition.
¶ 49. The second, and perhaps more fundamental, flaw in the majority's reasoning is that the jury in Genry's case was not instructed on the concept of constructive breaking. Whether the facts of this case would support a finding of constructive, rather than actual, breaking is a question of fact that could only be passed upon by the jury. The majority, in affirming Genry's conviction on the theory of constructive breaking, substitutes itself for a mythical jury hypothetically instructed on the law of constructive breaking and then surmises that this imaginary jury, conversant in areas of the law about which the actual jury had not the faintest idea, would certainly have convicted Genry had it just been given the opportunityall of which *315 may be true, but none of which constitutes the proper role of an appellate court.
¶ 50. I would reverse and render Genry's burglary conviction for lack of evidence of an actual breaking. I would reject the alternative theory of constructive breaking both for lack of evidence and because the jury was not instructed on that theory.

II.

Aggravated Assault
¶ 51. I would also reverse Genry's conviction of aggravated assault and remand for sentencing under simple assault. The evidence demonstrates that Genry held a knife to one employee's throat and threatened her with harm in order to further his purpose of robbery. Once he was confronted with an armed adversary in the person of the off-duty state trooper, he threw down the knife and fled. This case presents in stark terms the difference between a threat to injure and an attempt to injure. Genry threatened to injure and had the apparent capability to do so, but there is no evidence to support a finding that he made an actual but unsuccessful effort to injure the employee. It may well have been that, had the gun never been produced and had all persons in the store followed Genry's directives, Genry would not have injured the hostage despite his evident ability to do so. This is not to say that Genry's activity was not criminal. It simply was not an act of aggravated assault. The issue is, in my view, controlled by Gibson v. State, 660 So.2d 1268, 1269 (Miss.1995). In Gibson, the defendant pointed a gun at a policeman's chest with every apparent ability to fire and injure the officer. Id. However, on the officer's command, Gibson dropped the weapon. Id. The Mississippi Supreme Court concluded that these facts could not support an aggravated assault conviction on the theory of thwarted attempt. Id. In both this case and in Gibson, the question of how events would have played out had the defendant not heeded a command to surrender his weapon involves too much speculation. It is impossible to say with the certainty needed to support a criminal conviction that an injury would have occurred but for the officer's intervention. This inevitable uncertainty as to how the episode would have unfolded stands in the way of any inference that Genry's actions constituted a present attempt, rather than a conditional threat, to injure.
¶ 52. However, since merely putting one in fear of imminent harm constitutes the lesser offense of simple assault, I would remand for sentencing under those provisions of the assault statute as was done on similar facts in Murray v. State, 403 So.2d 149 (Miss.1981).
KING AND SOUTHWICK, P.JJ., AND THOMAS, J., JOIN THIS SEPARATE WRITTEN OPINION.