# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00006-COA

**DEMETRIUS OMAR NABORS A/K/A
DEMETRIUS NABORS**                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                              **APPELLEE**

DATE OF JUDGMENT:                11/15/2023
TRIAL JUDGE:                     HON. DAL WILLIAMSON
COURT FROM WHICH APPEALED:       JONES COUNTY CIRCUIT COURT,
                                 SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:          OFFICE OF STATE PUBLIC DEFENDER
                                 BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: KATY TAYLOR SARVER
DISTRICT ATTORNEY:               ANTHONY J. BUCKLEY
NATURE OF THE CASE:              CRIMINAL - FELONY
DISPOSITION:                     AFFIRMED - 04/22/2025
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., McCARTY AND ST. PÉ, JJ.**

**ST. PÉ, J., FOR THE COURT:**

¶1.     Demetrius Nabors was convicted of aggravated assault of a law enforcement officer and sentenced to twenty-three years in custody, with twenty years to serve and three years suspended, and three years of post-release supervision. He was indicted for "purposely, knowingly, and feloniously caus[ing] bodily injury to another, . . . a law enforcement officer acting within the scope of his duty, office, or employment, with a deadly weapon or other means likely to produce death or serious bodily harm, to wit: a motor vehicle." On appeal, Nabors argues that the State presented insufficient evidence of his intent to commit

aggravated assault, that the verdict is against the weight of the evidence, that the trial court plainly erred by giving a flight instruction to the jury, and that he received ineffective assistance of counsel.

¶2. We find no reversible error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. In September 2020, around 10:30 p.m. near Sandersville, Jones County Sheriff's Deputy Derrick Knight saw a four-door silver car "drive off the right side of the roadway." He thought the driver might be sleepy or possibly under the influence, so he turned on his blue lights to initiate a traffic stop. The driver, Nabors, pulled over in a business's driveway.

¶4. Deputy Knight approached the car, which had heavily tinted windows he could not see through. He stayed near the rear of the vehicle and ordered Nabors to open the window. Nabors rolled the rear window down instead and told Deputy Knight the driver's window was broken. So Deputy Knight asked him to open the door instead. Nabors complied.

¶5. Nabors gave Deputy Knight a valid license and insurance card. Deputy Knight told Nabors why he had been stopped and asked if Nabors was okay. Nabors started to explain where he was going, but Deputy Knight noticed the smell of marijuana emanating from the open car. Deputy Knight then noticed that Nabors's eyes were bloodshot and "glossy" and that he appeared to have "delayed motor function skills," which Deputy Knight believed were consistent with someone who had been using a controlled substance.

¶6. Deputy Knight asked Nabors how long it had been since he last smoked marijuana, and Nabors admitted smoking the day before. Deputy Knight asked if there was "weed in the

car," because he could smell it. Nabors admitted that someone had smoked in the car earlier. Deputy Knight then asked if there were weapons, which Nabors denied. Nabors asked Deputy Knight to give him "some kind of test" to prove he was not under the influence. Deputy Knight then ordered Nabors out of the car to begin a DUI investigation.

¶7. Nabors unbuckled his seatbelt as if he were going to comply, but then he paused and asked Deputy Knight to "call a white shirt" because he did not "feel safe." Deputy Knight testified that he did not know what that meant at the time but had since learned that it meant a supervisor. Deputy Knight asked Nabors what he meant, and Nabors again stated that he felt unsafe. Deputy Knight then told Nabors he needed to exit the car. Nabors asked, "Am I being detained?" and Deputy Knight said, "Yes, sir, you are. I need you to exit the vehicle now." Suddenly, Nabors grabbed for the open door and tried to slam it shut. Deputy Knight leaned into the car to try to pull Nabors out instead.

¶8. Deputy Knight testified that as they struggled, Nabors reached toward the passenger seat, where Deputy Knight claimed to see a firearm lodged between the seat and center console. The fight intensified as Deputy Knight tried to stop Nabors from accessing the gun. In the scuffle, Nabors put the car into reverse, hitting Deputy Knight and pushing him into the front of his patrol car as the car careened backward.

¶9. Deputy Knight's body camera showed the moment that Nabors grabbed for the door, but once Deputy Knight tried to prevent that, the body-camera video footage became too chaotic to discern details. Roughly ten seconds passed from the time Nabors reached for the door and the time he drove away after Deputy Knight was injured. Video from Deputy

Knight's dash cam showed that when Nabors reached for the door, Deputy Knight immediately stepped in front of the door to prevent it from closing. The moment Deputy Knight leaned into the car, the reverse-indicating lights illuminated, and Deputy Knight tried to pull Nabors from the car. Suddenly, Nabors's vehicle accelerated backward, with Deputy Knight still partially outside the car, and his body slammed into the front passenger side of his patrol car.

¶10. Deputy Knight testified at trial that he was hit by Nabors's vehicle and slammed into his own patrol car. He felt pain in his back and shoulder and heard a loud noise that he thought was a shot. Deputy Knight testified that he later discovered he had not been shot, but he did separate his right shoulder, tear his rotator cuff, and fracture some vertebrae. Nabors sped off, and Deputy Knight radioed for backup. On cross-examination, Deputy Knight explained that he did not call for backup after Nabors requested "a white shirt" because it was "not feasible" during night shift, and it was not standard procedure.

¶11. Deputy Jake Driskell responded to Deputy Knight's call for help, and he discovered Nabors's abandoned car roughly 1,000 yards away. He smelled marijuana and saw some on the ground. Deputy Driskell found the keys to the car hanging on a nearby fence, suggesting that Nabors had jumped the fence and run away. Officers could not find Nabors that night.

¶12. The next day, Deputy Driskell learned that a handgun had been found roughly 1,500 feet from the place Nabors was initially stopped. Deputy Driskell testified that the gun appeared to be damaged, and he suggested at trial that it was damaged after Nabors threw it from the car.

¶13. Nabors testified that he was from Chicago and moved to Jones County to help care for his grandparents. He was still unfamiliar with the area and was trying to figure out where he was when he saw blue lights behind him. Nabors testified that he pulled into the business's driveway because it was well lit. Nabors said he had no issues with Deputy Knight until he saw Deputy Knight reach toward his weapon, which was holstered on his hip. Nabors testified that Chicago had "a lot of police violence and killings" and that he "did not feel safe" alone with Deputy Knight. Nabors testified that he had no reason to run and that he "never intend[ed] for [Knight] to get hurt or any of that." He admitted that he "was in the wrong for taking off" but said that he "was fearing for [his] life, and that's the reason why [he] took off." He apologized to Deputy Knight and to Nabors's children for getting himself in this situation.

¶14. No other witnesses testified. The jury found Nabors guilty as charged. Nabors filed post-trial motions for JNOV or a new trial, which were denied, and he timely appealed.

**ANALYSIS**

**I.     Sufficiency of the Evidence**

¶15. Nabors argues that the State failed to prove beyond a reasonable doubt that Nabors *intended* for his vehicle to hit Knight. He argues that Knight's injuries were the result of accident or negligence only. The State counters that intent is a question for the jury and that the State is not required to prove intent in an aggravated assault case.

¶16. When addressing the legal sufficiency of a conviction, we must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a

5

reasonable doubt," and in doing so, we assess "the evidence in the light most favorable to the prosecution." *Potts v. State*, 233 So. 3d 782, 790 (¶¶30-31) (Miss. 2017). The State receives "the benefit of all favorable inferences reasonably drawn from the evidence." *Casey v. State*, 179 So. 3d 74, 80 (¶37) (Miss. Ct. App. 2015).

¶17. Nabors was indicted for, and the jury was instructed on, Mississippi Code Annotated section 97-3-7(2)(a)(ii) (Rev. 2020), which states in part that a person is guilty of aggravated assault if he "purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm."[1] Nabors's conviction as charged in the indictment "required the injury to have been caused 'purposely or knowingly.' 'Purposely or knowingly' has substantially the same meaning as 'wilfully,' which itself 'means intentionally and not by accident.'" *Greenleaf v. State*, 267 So. 3d 749, 752 (¶13) (Miss. 2019) (citation omitted).

¶18. Nabors argues that because a deadly weapon was involved, the State must prove an intent to injure. However, the case primarily cited by Nabors involved an *attempt* to cause bodily injury with a deadly weapon;[2] here, there is no doubt that the injury actually occurred. The State counters that this Court and the Supreme Court have held that the intent to commit

---

[1] This subsection also encompasses an attempt to cause bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm, but Nabors's indictment did not include this language. *See* Miss. Code Ann. § 97-3-7(2)(a)(ii).

[2] In *Genry v. State*, 767 So. 2d 302 (Miss. Ct. App. 2000), the defendant held a knife at the throat of one victim and drove his car directly at another victim. *Id.* at 305 (¶4). He was indicted for attempting to cause bodily injury. *Id.* at 311 (¶¶34-36). At no point did this Court state that an aggravated assault with a deadly weapon "must [have] some purposeful action with an 'intent' to injure," as Nabors claims.

aggravated assault is a question for the jury and can be inferred by the act itself and the circumstances surrounding the act.

¶19.     In *Redd v. State*, 368 So. 3d 306 (Miss. 2023), the defendant was convicted under section 97-3-7(2)(a)(ii) (Rev. 2020) and argued on appeal that the State failed to establish that he had the intent to cause bodily injury to the victim. *Id.* at 311 (¶¶28, 30). The defendant claimed that "he had 'no intent or . . . ill-will to shoot'" the victim and that the gun went off unintentionally. *Id.* at (¶¶24-25).  The Supreme Court noted: "there is no dispute that [the victim] was shot and injured by a deadly weapon. The only other element required in this case was whether Redd 'purposely or knowingly caused' it." *Id.* at (¶¶28, 30). The Supreme Court held that there was evidence from which the jury could "reasonably infer" that the defendant "purposely fired his weapon" at the victim. *Id.* at 312 (¶35).

¶20.     To support Nabors's conviction, the State had to establish that Nabors purposely and knowingly struck Deputy Knight with a deadly weapon, causing bodily injury. The State's evidence established this beyond a reasonable doubt: the video showed Deputy Knight being slammed into the patrol car as a result of Nabors's car driving away, and there was no dispute at trial that Nabors caused the car to drive away. He did not testify that he accidentally shifted the car into reverse, nor did he testify that he was unable to stop the car once it started moving. The jury saw the video of Deputy Knight's injury and heard Nabors's testimony that he was scared for his life. The disputed question of Nabors's intent to injure was for the jury to resolve.

¶21.     The trial court did not err by denying Nabors's motion for JNOV, as the evidence

taken in the light most favorable to the prosecution is sufficient to support the conviction.[3]

## II. Weight of the Evidence

¶22. We review a challenge to the weight of the evidence by examining "the evidence in the light most favorable to the verdict and will not reverse unless it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bright v. State*, 986 So. 2d 1042, 1046 (¶11) (Miss. Ct. App. 2008). However, we cannot "make independent resolutions of conflicting evidence," nor will we "reweigh the evidence or make witness-credibility determinations." *Id.* "It is well established that matters regarding the weight of the evidence are to be resolved by the jury." *Id.* (quoting *Wilson v. State*, 904 So. 2d 987, 995 (¶21) (Miss. 2004)).

¶23. Nabors makes no additional argument when challenging the weight of the evidence, arguing again that the evidence showed that he acted without intent. As noted *supra*, the disputed issue of intent was one for the jury to resolve based on the evidence and their assessment of the witnesses' credibility. We find no error in the trial court's denying Nabors's motion for a new trial based on the weight of the evidence.

## III. Flight Instruction Error

¶24. Nabors argues that the trial court plainly erred by giving the flight instruction because it was not supported by the evidence and because it allowed the jury to consider his flight as

---

[3] We decline to address Nabors's arguments related to aggravated assault under romanette (i) (serious bodily injury under circumstances manifesting extreme indifference to human life), as the State did not indict him under that subpart. *See* Miss. Code Ann. § 97-3-7(2)(a)(i). Similarly, we decline to address Nabors's discussion regarding foreseeability and culpable negligence manslaughter.

evidence of his "guilty knowledge" of the gun or marijuana found near his car, which Nabors was not charged with. He acknowledges that his trial counsel did not object to the instruction and asks us to review for plain error.

¶25. Because Nabors did not object to the instruction on the ground that it was not supported—and in fact acquiesced to the giving of the instruction—he cannot raise it as an issue on appeal. *Spiers v. State*, 361 So. 3d 643, 654-55 (¶36) (Miss. Ct. App. 2013). "Plain-error review is properly utilized for correcting obvious instances of injustice or misapplied law." *Id.* at 657 (¶41). Plain error applies only where "there has been an error that resulted in a manifest miscarriage of justice or seriously affect[ed] the fairness, integrity[,] or public reputation of judicial proceedings." *Id.* When applied, we must determine "if the trial court deviated from a legal rule, whether that error is plain, clear, or obvious, and whether that error has prejudiced the outcome of trial." *Id.*

¶26. Jury instructions are generally within the discretion of the trial court, and we review the grant or denial of instructions for an abuse of discretion. *Robinson v. State*, 324 So. 3d 1137, 1143 (¶19) (Miss. 2021). Jury instructions must be read as a whole, and if the instructions fairly, though not perfectly, provide the rules of law, we must affirm. *Id.* The Supreme Court has instructed that "flight instruction[s] may be given if that flight is unexplained and somehow probative of guilt or guilty knowledge." *Anderson v. State*, 185 So. 3d 966, 970 (¶10) (Miss. 2015) (internal quotation marks omitted). Flight may be "explained" if "the defendant fled for some reason independent of the crime." *Ford v. State*, 206 So. 3d 486, 493 (¶22) (Miss. 2016). However, if the defendant's explanation is

9

contradicted by other evidence, then the defendant's claimed explanation is "legally insufficient to support reversal based upon the giving of a flight instruction." *Bowman v. State*, 360 So. 3d 977, 994 (¶65) (Miss. Ct. App. 2022).

¶27.   Instruction S-4A read:

> "Flight" is a circumstance from which guilty knowledge and fear may be inferred. If you believe from the evidence in this case beyond a reasonable doubt that the defendant . . . did flee, such flight is to be considered in connection with all other evidence in this case. You will determine from all the facts whether such flight was from a conscious sense of guilt or whether it was caused by other things and give it such weight as you think it is entitled to in determining your verdict in this case.

The trial court noted that "there was no other explanation given" but made no mention of the flight's probative value.[4]

¶28.   While "flight evidence is controversial and must be handled with care,"[5] we find no plain error in the giving of this particular instruction in this case. Nabors did not give an explanation for why he fled on foot after striking Deputy Knight and driving roughly 1,000 yards from the scene. His only explanation for driving away was that he was scared of potential police violence. But that is an explanation for why the assault occurred, not why he

---

[4] The State's original S-4 was amended to remove references to "hiding."

[5] *Ford*, 206 So. 3d at 493 (¶20) (quoting *United States v. Benedetti*, 433 F.3d 111, 116 (1st Cir. 2005)); *see also Ervin v. State*, 136 So. 3d 1053, 1059-60 (¶20) (Miss. 2014) (reversing on other grounds but noting "the questionable wisdom" in granting a flight instruction); *Randolph v. State*, 852 So. 2d 547, 567-68 (¶70) (Miss. 2002) (Carlson, J., specially concurring) ("While I agree . . . that the giving of the 'flight instruction' was proper, based on the facts and circumstances of this particular case and the applicable case law, the use of the flight instruction in this state can be described in one word—'dangerous.' . . . A trial court, by giving a flight instruction, simply puts itself in a position of possibly placing a reversible error in an otherwise clean record. If a trial court persists in giving a flight instruction, . . . it should do so with great caution.").

fled the scene. Nabors's driving some distance away, abandoning his car, and jumping a fence in the middle of the night is certainly probative of his guilty knowledge that he struck Knight with his vehicle.

¶29. Nabors alternatively complains that the instruction was "additionally improper" because it confused the jury whether the flight showed guilty knowledge of the marijuana or the gun found near his car. Again, this argument was not raised at trial and must be reviewed for plain error. There was no plain error on these grounds in giving the instruction because the instruction did not prejudice the outcome of trial.

¶30. Footage from Deputy Knight's body camera and dash camera clearly showed the assault on Deputy Knight. As discussed, the State presented ample evidence to support Nabors's conviction. Indeed, the video alone is sufficient to convict. Because our application of plain-error review is only for "correcting obvious instances of injustice" and because the instruction did not clearly "prejudice[] the outcome of the trial," no plain error occurred.

### IV. Ineffective Assistance of Counsel

¶31. In his final issue, Nabors claims that he received ineffective assistance of counsel because his trial counsel did not object to the flight instruction and did not request a jury instruction on the lesser-included offense of simple assault.

¶32. Generally, claims of ineffective assistance are better addressed in post-conviction proceedings "because we are limited to the trial court record in our review of the claim[,] and there is usually insufficient evidence within the record to evaluate the claim." *Melendez v. State*, 354 So. 3d 944, 953 (¶37) (Miss. Ct. App. 2023). However, we will address the merits

11

of an ineffective assistance of counsel claim on direct appeal if the parties stipulate that the record is adequate or if the record affirmatively shows ineffectiveness or that the claims are without merit. *Id.*

¶33. To prove ineffective assistance, the defendant must show both that (1) his counsel's performance was constitutionally deficient and (2) that the deficiency prejudiced the defense. *Id.* at (¶36) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "There is a strong presumption that counsel's performance falls within the range of reasonable professional assistance," and "to overcome this presumption, the defendant must show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Renfrow v. State*, 202 So. 3d 633, 636 (¶7) (Miss. Ct. App. 2016).

¶34. Nabors argues that his counsel should have objected to the flight instruction. But as addressed, the flight instruction was not erroneously given. Because the instruction was warranted by the law and evidence, there was "no reason to object under Mississippi law." *Cole v. State*, 666 So. 2d 767, 778 (Miss. 1995). There is no deficiency in not objecting to this instruction. Even if we were to assume counsel should have objected to the instruction, Nabors has not shown how he was prejudiced by the instruction or how the outcome would have changed without the instruction being given. Without this, there can be no ineffective assistance.

¶35. Nabors's argument that counsel was ineffective for failing to request a simple assault jury instruction is likewise without merit. "Counsel's decision not to request a specific jury

instruction falls under the category of trial strategy and is given much deference by this Court." *Fair v. State*, 950 So. 2d 1108, 1111 (¶9) (Miss. Ct. App. 2007). It is permissible trial strategy to pursue an all-or-nothing approach. *See Miller v. State*, 914 So. 2d 800, 805 (¶17) (Miss. Ct. App. 2005) ("It is possible that [Nabors's] counsel believed that [Nabors] would be acquitted of the greater charge but convicted of the lesser offense[] and made a calculated decision not to pursue the lesser-included offense instruction."). Because Nabors cannot show that counsel's actions or inactions were deficient or that he was prejudiced, his ineffective-assistance-of-counsel claims fail.

## CONCLUSION

¶36. We affirm Nabors's conviction and sentence for aggravated assault. The State presented sufficient evidence for the jury to find Nabors guilty beyond a reasonable doubt, and the jury's verdict was not against the overwhelming weight of the evidence. The flight instruction given to the jury was appropriate under the facts of this case, and Nabors's trial counsel was not constitutionally ineffective for failing to object to the instruction. Further, Nabors's counsel was not ineffective for failing to seek a lesser-included instruction on simple assault.

¶37. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER AND WEDDLE, JJ., CONCUR.**

13